(No. 26056.—

A. R. CHANCE *et al.* Appellees, *vs.* BIRDIE KIMBRELL, Appellant.

*Opinion filed June 13, 1941.*

WILL M. ALBERT, C. H. DOUGLAS, and CARUS S. ICE-NOGLE, for appellant.

WILL P. WELKER, W. F. SONNEMANN, ROBERT BURN-SIDE, HARRIS, PRICE & ALEXANDER, and R. E. AUSMUS, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Fayette county which dismissed for want of equity the counter-claim of Birdie Kimbrell, who will be hereinafter referred to as defendant, and granted the prayer of a complaint filed by several parties hereinafter referred to as

plaintiffs. Plaintiffs sought by their complaint to correct as a mutual mistake an erroneous description in a mineral deed alleged to have been executed by defendant. Defendant, by her counter-claim, asked that the deed containing the erroneous description and two other deeds given at the same time be declared void and removed as clouds on her title. Defendant appealed directly to this court. Support for this court's jurisdiction by direct appeal is found in *Tucker* v. *Kanatzar,* 373 Ill. 162, and *Ohio Oil Co.* v. *Daughetee,* 240 id. 361.

Determination of the questions raised on the dismissal of the counter-claim makes it unnecessary to consider plaintiffs' right to a reformation of the description. Defendant owned 302 acres of land located in Fayette county. During the summer of 1936 she executed an oil and gas lease reserving the usual royalties. This litigation arises out of three mineral deeds purported to have been signed by defendant which convey an undivided one-half interest in the mineral rights in said lands subject to the oil and gas lease. Defendant alleged in her counter-claim that (a) the mineral deeds were blank as to grantee when they were executed; (b) that material alterations were made after execution by the adding of the name of a grantee and by inserting the following clause "this deed expires in twenty-five years unless oil and gas is produced on this land;" and (c) that the deeds were procured by fraud and misrepresentation practiced upon her by Charles L. Kanatzar.

The plaintiffs in the complaint were all made defendants to the counter-claim and Charles L. Kanatzar and C. Leplie Kanatzar were brought in as new parties defendants to the counter-claim.

The several tracts of land described in the three deeds are grouped according to the deeds as tracts Nos. 1, 2 and 3. Tract No. 1 purported to convey one-half of defendant's mineral rights in 172 acres; tract No. 2, 100 acres, and No. 3, 30 acres. The instruments conveying

tracts Nos. 1 and 2 were to A. R. Chance as grantee while the one conveying No. 3 was to A. B. Chance. All the deeds were dated March 17, 1937, and purported to have been acknowledged by defendant before the counter-defendant Charles L. Kanatzar.

By means of several conveyances bearing the dates of April 19, April 22, May 18, and June 1, 1937, the grantees named in the deeds of March 17 conveyed fractional interests to various grantees. George W. Atwood, Maurice G. Atwood and Charles H. Atwood acquired certain interests and paid Charles L. Kanatzar for the same. During the trial both the complaint and counter-claim were dismissed as to all the Atwoods. The remaining interests are now held in the name of A. B. Chance, a cousin of Charles L. Kanatzar, F. Gano Chance, a son of A. B. Chance, and C. Leplie Kanatzar, a son of Charles L. Kanatzar. No question is raised as to the interest of an innocent purchaser. The litigation on the counter-claim is between defendant as counter-claimant, the two Chances and the two Kanatzars as counter-defendants and involves the mineral rights conveyed by defendant's deeds, excepting that acquired by the Atwoods which was limited to 60 acres of tract No. 1 and a part of tract No. 2.

On the hearing, defendant denied execution of the three deeds but she had not made specific denial of such execution in her pleading and in presenting her case in this court she urges points which necessarily assume the genuineness of her signature to the three deeds. Under such conditions they will be considered as having been duly signed by defendant. She signed them in the presence of Charles L. Kanatzar in her home in St. Elmo in said county. She testified Kanatzar came to her house and made inquiry relative to the purchase of one-half her mineral rights. That he told her he was buying it for people from Texas and gave the name Hays as a purchaser. She said he offered her $375 which she refused and to which she made

the counter-proposition that she should have $500; that Kanatzar then said the interested purchasers were in his office in St. Elmo and he would submit her proposition to them; that he left her house and returned in a short time and said they agreed to pay the $500. Kanatzar gave defendant his personal check for that amount and when she made inquiry relative to his check, he stated the parties had given him money which he had deposited in his personal account and was paying from such fund. She testified, further, that she told Kanatzar at this time, and on a previous occasion in 1936, that she would not sell her mineral rights for a longer period than ten years and she claims that the 25-year limitation period in the deeds was not present when she signed it, and that the name A. R. Chance as grantee did not appear in the deeds for tracts Nos. 1 and 2. In July, 1938, Charles L. Kanatzar called on defendant and asked her to sign a correction deed as to the erroneous description of 10 acres included in tract No. 1. Kanatzar had the deed with him which defendant examined and she says that for the first time she then learned that the conveyance was to A. R. Chance and that it contained the 25-year limitation provision. The suit was instituted August 18, 1938, and defendant filed her counterclaim January 20, 1939. She offers to do equity by repaying the consideration received to the person to whom it equitably belongs. The two deeds conveying tracts Nos. 1 and 2 to A. R. Chance were filed for record April 30, 1937, and the one conveying tract No. 3 to A. B. Chance was filed March 19, 1937.

Kanatzar's testimony is in direct conflict with defendant on the main parts of the transaction. He denied having told her that he was buying the property for people from Texas or that he gave her the name Hays as a purchaser. He says there was no one waiting at his office and the purpose of his going there was to procure blank deeds. He testified he went to defendant's home pursuant to a

request made by a mutual friend of his and defendant's, that he had known defendant for many years and that in a few instances she had sought and obtained his judgment and advice on matters of her business. He knew she was in financial distress with her property mortgaged to the St. Elmo bank and that interest was in arrears and taxes were due. On cross-examination he said he went to her home because he was sympathetic toward her by reason of her financial condition.

One of the names appearing in the complaint as plaintiff was "A. R. Chance." It was alleged he acquired the mineral deed to tract. No. 1, that he paid the defendant a valuable consideration for it and that there was a mutual mistake in the description for the correction of which he asked the aid of a court of equity. The gist of the whole complaint was that "A. R. Chance" was the real purchaser and that the other parties were added as plaintiffs because they were his grantees and in making the conveyance to them he had followed the erroneous description. Prior to the hearing, defendant caused notice to be served demanding the presence of A. R. Chance, A. B. Chance, and F. Gano Chance at the trial. None of them appeared, but it developed that A. B. Chance and F. Gano Chance are residents of Missouri, while the name "A. R. Chance" was fictitious. In the introduction of evidence to support plaintiff's complaint, Charles L. Kanatzar was called as a witness by plaintiff and on cross-examination undertook to deceive the court by making it appear there was an "A. R. Chance" who was then residing in St. Elmo and manager of a tavern. He testified that he, Kanatzar, had purchased the property for A. B. Chance but had arranged with A. R. Chance to take the deed in his name for A. B. Chance. When interrogated as to the identity of A. R. Chance, he stated positively he was not a cousin of A. B. Chance and when asked as to the signatures to certain mineral deeds purported to have been signed by A. R. Chance conveying fractional

interests in some of the lands to the Atwoods he said "that was signed by a party by the name of A. R. Chance and that is his signature." He stated A. R. Chance was a "break-up man" used for convenience to convey fractional interests of the mineral rights when sold to various purchasers.

Defendant *subpoenaed* and called a witness who answered the name of A. R. Chance, but on his examination it developed his real name was Charles J. Davis; that he was a resident of St. Elmo but was not known by the name of A. R. Chance and had never used such name except in reference to the transactions concerning deeds which he executed for Kanatzar. It appears that Kanatzar had arranged with Davis to have the deeds in this case and others taken in the name of A. R. Chance and when fractional interests were sold by Kanatzar, Davis would sign the name A. R. Chance, for which he received $1 per signature. Davis' part in this transaction is described by him as follows: "I didn't know anything about the two mineral deeds to A. R. Chance [defendant's deeds for tracts Nos. 1 and 2] until after this suit was brought; didn't know about them at the time they were made. I signed the name A. R. Chance on * * * [deeds he executed to A. B. Chance and the Atwoods.] I remember those deeds were just blanks when I signed the name A. R. Chance * * * When he [Kanatzar] wanted me to sign them, he would come and say "Have you a minute" and I would say "yes" and he would tell me where to sign * * * I did that on more than one occasion. I did not know anything about what papers or what deeds they might be. I do not know when they were filled in. I never at any time tried to buy any royalties from Mrs. Kimbrell [defendant] and knew nothing about it. I know of no deeds by Mrs. Kimbrell to me as A. R. Chance and she at no time ever delivered any deeds to me either as Davis or as A. R. Chance."

After it was developed by the examination of Davis and other witnesses that there was no A. R. Chance and that the name A. R. Chance in the two deeds was fictitious, defendant made a motion to strike such name from the pleadings. Ruling was reserved until the conclusion of the hearing and then allowed. After the introduction of evidence as to the identity of A. R. Chance, defendant obtained leave to amend her counter-claim, by adding that the deeds conveying tracts Nos. 1, 2 and 3 were to a fictitious grantee.

The instruments signed A. R. Chance, conveying an interest in mineral rights to A. B. Chance on April 29, 1937, and May 18, 1937, and the three deeds to Atwoods, all purported to have been acknowledged by A. R. Chance before Charles L. Kanatzar, a notary public. Kanatzar testified that, in buying the mineral rights of defendant, he was acting for A. B. Chance and the only interest he had in the transaction was a commission of twenty-five cents per acre. He stated he told defendant he was purchasing her mineral rights for a Mr. Chance but when asked as to a disclosure of the identity of A. B. Chance, he testified that he did not designate A. B. Chance to her for the reason it would be "all moonshine with her who was who; she did not know him."

It is an elementary rule of law that for a deed or grant to pass a present estate there must be a grantee capable of receiving it. As a corollary to this rule, no present estate or interest is conveyed where it is intended by the parties that the title shall pass to a fictitious grantee. (18 Corpus Juris, sec. 36, p. 158; *Portage City Bank* v. *Plank,* 141 Wis. 653, 120 N. W. 1000.) This rule is to be distinguished from another well-settled rule that where the parties intend to pass a present estate to an existent grantee but under a name other than the correct one, such a conveyance passes title to the intended grantee. (*Wilson* v.

*Wright,* 84 Cal. 239, 24 Pac. 114; *Chapman* v. *Tyson,* 39 Wash. 523, 81 Pac. 1066; *Thomas* v. *Wyatt,* 31 Mo. 188.) Plaintiffs seek to sustain these deeds under the latter rule. The intention of the parties as to who shall receive the title is a controlling element. Defendant testified Kanatzar told her the purchase was for a man by the name of Hays. Kanatzar denies this and says that he told her it was for a Mr. Chance. It will be observed that he was not explicit in stating that it was A. B. Chance. Without such information defendant could not be said to have intended to transfer her title in tracts Nos. 1 and 2 to A. B. Chance by using the name A. R. Chance as grantee. It is not claimed Davis had any interest as grantee which would sustain the conveyance to him under the name of A. R. Chance, neither could the deeds be approved as conveying the title to Charles L. Kanatzar by the use of the fictitious name of A. R. Chance. The name A. R. Chance did not represent any real·person. It was, therefore, non-existent, and the deeds conveying tracts Nos. 1 and 2 were void and the title remained in the defendant.

If the three deeds were blank as to grantee when defendant attached her signature they passed no title and are a nullity. (*Tucker* v. *Kanatzar, supra; Donnelly* v. *Dumanowski,* 329 Ill. 482; *Osby* v. *Reynolds,* 260 id. 576.) We recognize that the chancellor found the deeds were not blank as to grantee and that the rule requires an affirmance of that finding unless such finding is manifestly and palpably wrong. Kanatzar's persistent conduct and attitude throughout the transactions with the defendant in reference to concealing the identity of the real purchaser and his evidence on the trial given with the evident intent to deceive the court, so characterizes his testimony on other questions of fact in dispute that no weight can be attached to it. The same observation may well be made as to whether the 25-year limitation clause was inserted after or before the execution of the deeds. Defendant testified it was not in

the deeds when she signed while Kanatzar states the opposite. Under such conditions the finding of the chancellor cannot be sustained.

Defendant further contends that fraud and misrepresentation practised upon her by Charles L. Kanatzar vitiates the deeds. It is not necessary to extend this opinion to include a discussion of the evidence bearing upon that question for, from the evidence referred to, it is obvious a court of equity can not give its sanction to Kanatzar's conduct in this case.

For the reasons assigned, the decree of the circuit court is reversed and the cause remanded, with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*

Mr. Justice Smith took no part in this decision.