### KIMBRELL v. DALLMAN, Collector of Internal Revenue.
### No. 752.

United States District Court
S. D. Illinois, S. D.
Sept. 21, 1948.

Will M. Albert, of Vandalia, Ill., and Ensel & Martin, of Springfield, Ill., for plaintiff.

Howard L. Doyle, U. S. Atty., of Springfield, Ill., and Benjamin H. Pester, of Washington, D. C., for defendant.

BRIGGLE, Chief Judge.

The above entitled cause on May 20, 1948, duly and regularly came on for trial and hearing before this Court sitting alone without a jury. Having considered the oral testimony, the stipulated facts, the exhibits and arguments of counsel, the Court makes and publishes the following:

#### Findings of Fact.

The Court finds:

That upon the trial the parties through their respective counsel duly made and filed their written stipulation of facts; that as and for its findings of fact the Court adopts said stipulation as supplemented in part by the documentary evidence and finds the essential facts to be as follows:

1. This action arises under the Internal Revenue Laws of the United States and is brought by Birdie Kimbrell against V. Y. Dallman, Collector of Internal Revenue, to recover the sum of $12,678.23, together with interest thereon as provided by law.

2. The plaintiff is now and has been at all times material to this action a resident of the City of St. Elmo, County of Fayette, State of Illinois.

3. The defendant is now and has been at all times material to this action Collector of Internal Revenue for the Eighth Collection District of Illinois, whose residence and principal place of business is Springfield, Illinois.

4. On April 30, 1937, and for a long time past, the plaintiff was the owner in fee of the following described real estate located in Fayette County, Illinois, containing 302 acres, more or less:

"The South half of the South half of the Southwest Quarter of the Southwest Quarter of Section 8; the West half of the Northwest Quarter of the Northwest Quarter of Section 17; a tract of land described as follows, as beginning at a point 30 Rods West of the Southwest Corner of the Northeast Quarter of the Northeast Quarter of Section 19, Township 7 North, Range 3 East of the Third Principal Meridian in Fayette County, Illinois, running thence West 20 Rods, thence South 160 Rods, thence East 20 Rods, thence North 160 Rods to the place of beginning.

"Also, the North half of the Southwest fractional Quarter of Section 19; and the East 11½ Acres of the Southwest Quarter of the Southwest Quarter of Section 19; and the West 10 Acres of the Southeast Quarter of the Southwest Quarter of Section 19, all of the above lands located in Township 7 North, Range 3 East of the Third Principal Meridian in Fayette County, Illinois.

"Also, the Southeast Quarter of the Northwest Quarter of Section 29; and the Northwest Quarter of the Southeast Quarter of Section 29; and the West half of the Southeast Quarter of the Southwest Quarter of Section 29. The above three tracts of land located in Township 8 North, Range 3 East of the Third Principal Meridian in Fayette County, Illinois.

"Also, the Northeast Quarter of the Southeast Quarter of Section Twenty-four (24) in Township 7 North, Range 2 East of the Third Principal Meridian in Fayette County, Illinois.".

5. Prior to March 17, 1937, plaintiff had executed oil leases on the above described lands, retaining a one-eighth royalty interest. Plaintiff retained a one-eighth royalty interest in the minerals underlying the land.

6. On March 17, 1937, plaintiff executed three mineral deeds, one to A. B. Chance, and two to A. R. Chance, both of St. Elmo, Illinois. These deeds purported to convey to these grantees an undivided one-half interest in and to all the oil and gas in and under and that might be produced from the above described lands. The effect of these deeds was to purport to convey to the said A. B. Chance and A. R. Chance a one-sixteenth royalty interest. These deeds were recorded in the Recorder's Office of Fayette County, Illinois, April 30, 1937.

7. On August 18, 1938, A. R. Chance filed a suit in the Circuit Court of Fayette County, Illinois, against Birdie Kimbrell to correct a description in one of the mineral deeds purporting to transfer one-half of her mineral interest in the following described tract:

"Beginning at a point 30 Rods West of the Southwest corner of the Northeast Quarter of the Northeast Quarter of Section 19, Township 7 North, Range 3 East, running thence West 20 Rods, thence South 160 Rods, thence East 20 Rods, North 160 Rods."

8. On December 15, 1939, Birdie Kimbrell filed an answer and counterclaim against A. R. Chance, A. B. Chance and other defendants who purported to have purchased mineral interests from A. R. Chance and A. B. Chance which they had acquired by virtue of the mineral deeds as aforesaid. Mrs. Kimbrell generally alleged that the mineral deeds to A. R. Chance and A. B. Chance were obtained by fraud and for that and other reasons asked to have the mineral deeds set aside and declared void. She alleged that there was no person by the name of A. R. Chance, and she prayed the court to require the defendants A. R. Chance, A. B. Chance and others to render a full and complete accounting of all income, returns and benefits received by them under and by virtue of the aforesaid deeds, and the mesne transfers from A. R. Chance and A. B. Chance.

9. The suit was tried in the Circuit Court of Fayette County Illinois and decree entered on October 26, 1940. The Court granted the prayer of the complainant A. R. Chance to reform the mineral deeds, ordered the reform of such deeds, and denied the prayers of the counterclaimant Birdie Kimbrell. Mrs. Kimbrell appealed to the Supreme Court in the case entitled Chance v. Kimbrell, found at 376 Ill. 615, 35 N.E.2d 48. The Supreme Court reversed the case, with directions, holding that all of the mineral deeds were void.

10. On July 14, 1941, the Circuit Court of Fayette County, Illinois, entered its final decree finding all of the issues of the case in favor of Birdie Kimbrell.

11. In the year 1941, as a result of the final decree of the Circuit Court of Fayette County, Illinois, Mrs. Kimbrell received $31,046.65 in oil royalties impounded by the Carter and Sohio Oil Companies because of the pendency of the suit, and $2,880.50 in oil royalties from Kanatzar and Chance, paid to them by the oil companies prior to the filing of the suit. These amounts were attributable to the one-half of one-eighth retained royalty interest deeded by Mrs. Kimbrell to A. R. Chance and A. B. Chance. The fair market value of the one-half of the one-eighth retained royalty interest, apart from the impounded royalties, was $9,600 on July 14, 1941.

12. In 1939, plaintiff had employed Carus S. Icenogle, Attorney at Law, Mattoon, and C. H. Douglas, Attorney at Law, Mattoon, Illinois, under an agreement, together with Will M. Albert, Attorney at Law, Vandalia, Illinois, to represent her in the Chance v. Kimbrell litigation.

13. In 1940 Mrs. Kimbrell paid the sum of $5,666.66 attorneys' fees in cash. In 1941 Mrs. Kimbrell paid to the said attorneys the sum of $9,561.74 as and for their fees. In addition to the cash fees paid in 1941, Mrs. Kimbrell deeded to C. H. Douglas by mineral deed on August 30, 1941, an undivided one-forty-eighth (1/48) interest in certain of the oil and gas leases and an undivided one-twelfth interest in certain others of the oil and gas leases. Similar conveyances with identical interests were conveyed in the same tracts to Carus S. Icenogle.

14. The plaintiff deducted the amounts of the attorneys' fees paid in the years 1940 and 1941, in the amounts of $5,666.66

and $9,561.74 respectively, upon her income tax returns for these two years.

15. The plaintiff filed timely income tax returns with the defendant, Collector of Internal Revenue, for the years 1940 and 1941, and paid the tax shown to be due thereon. With respect to the taxable year 1940, the plaintiff paid $571.32. With respect to the taxable year 1941, the plaintiff paid $13,446.66.

16. Thereafter the Commissioner of Internal Revenue caused an examination to be made of the plaintiff's 1940 and 1941 income tax returns. With respect to the taxable year 1940, the Commissioner determined that the legal expenses deducted thereon to the extent of $3,251.07 were not allowable deductions for Federal income tax purposes. With respect to the taxable year 1941, the Commissioner determined that the whole amount of $9,561.74, representing legal fees and expenses, deducted by the plaintiff on her 1941 income tax return, was not an allowable deduction for Federal income tax purposes. Other items were adjusted by the Commissioner with respect to both of these years which are not material to the controversy in question.

17. The Commissioner assessed a deficiency for 1940 in the amount of $1,584.-36, and with respect to the taxable year 1941, an amount of $3,910.97. The taxpayer paid the deficiency for 1940 together with interest of $58.79, and paid the deficiency for 1941 together with interest at $713.46.

18. On August 20, 1943, plaintiff filed a claim for refund with the defendant in the amount of $1,056.86 for the calendar year 1940. The Commissioner of Internal Revenue, upon an examination of the return and claim for 1940, made a determination and allowance of an overassessment for the calendar year 1940 of $537.39.

19. On August 20, 1943, plaintiff filed a claim for refund with the defendant in the amount of $1,490.08 for the calendar year 1941. On or about August 17, 1945, plaintiff filed an amended claim for refund for the calendar year 1941 in the amount of $12,158.76. On October 5, 1945, the Commissioner of Internal Revenue notified plaintiff, by registered letter, under the provisions of Sec. 3772(a) (2), Internal Revenue Code, 26 U.S.C.A. § 3772(a) (2), that plaintiff's original claim for refund for the calendar year 1941 had been disallowed in full.

20. More than six months had elapsed from the filing of the claims for refund to the date plaintiff brought suit.

21. In so far as it is material, the issues respecting the deductibility of the legal fees developed in the trial of the proceeding were set forth in plaintiff's original and amended claims for refund.

22. The legal fees incurred and paid by the plaintiff in the taxable year 1940 in the amount in issue herein $3,251.07, and in 1941 the amount of $9,561.74, were reasonable compensation for the services rendered by the attorneys employed by the plaintiff in the prosecution of her litigation.

23. The legal expenses incurred and paid in 1940 and 1941 were expended in part for the recovery of income by oil companies during the course of the Kimbrell v. Chance litigation, and, in part, to recover a capital asset.

24. The amount of legal expenses paid in each year attributable to the recovery of income is that proportion of the legal expense in each year which the income recovered less the statutory depletion allowance of $27\frac{1}{2}\%$ thereof bears to the sum of the fair market value of the capital assets recovered and the impounded income recovered less the statutory depletion allowance of $27\frac{1}{2}\%$.

25. The amount of the legal expense for the calendar year 1940 attributable to the recovery of income is $2,338.41. The amount of the legal expense for the calendar year 1941 attributable to the recovery of income is $6,877.53. The computation of these amounts is shown on the attached Schedule A.

### Conclusions of Law.

1. The legal expenses paid by the plaintiff in the calendar year 1940 in the amount of $3,251.07 and in the calendar year 1941 in the amount of $9,561.74 were reasonable compensation for personal services actually rendered to the plaintiff by

her attorneys within the meaning of Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A).

2. The legal expenses paid by plaintiff in the calendar year 1940 to the extent of $2,338.41 and in the calendar year 1941 to the extent of $6,877.53 were expended for the recovery of income within the meaning of Section 23(a) (2) of the Internal Revenue Code and deductible by plaintiff in each of said years in the computation of her Federal income tax.

3. Plaintiff is entitled to recover from the defendant $400.71 for the calendar year 1940, together with interest as allowed by law, and $4,511.97 for the calendar year 1941, together with interest as allowed by law.

### Schedule A

| | | |
|---|---:|---:|
| Fair market value of mineral interest | | $ 9,600.00 |
| Income recovered: | | |
| Income from oil companies | $31,046.65 | |
| Income from A. B. Chance, et al. | 2,880.50 | |
| Total | $33,927.15 | |
| Less: 27½% depletion allowance | 9,329.97 | |
| | | $24,597.18 |
| Total | | $34,197.18 |
| Legal expenses paid in 1940 | $ 5,666.66 | |
| Less: previously allowed | 2,415.59 | |
| | $ 3,251.07 | |
| Legal expense paid in 1941 | 9,561.74 | |
| Total legal expense 1940–1941 | | $12,812.81 |

Allocation of legal expense to recovery of income:

$$\frac{\$24,597.18}{\$34,197.18} \times \$12,812.81 = \$ 9,215.94$$

Allocation of legal expense attributable to recovery of income to taxable year 1940:

$$\frac{\$ 3,251.07}{\$12,812.81} \times \$ 9,215.94 = \$ 2,338.41$$

Allocation of legal expense attributable to recovery of income to taxable year 1941:

$$\frac{\$ 9,561.74}{\$12,812.81} \times \$ 9,215.94 = \$ 6,877.53$$