(No. 12391.—Decree affirmed.)

W. D. SHELDON et al. Appellants, vs. THE ROCKFORD AND
INTERURBAN RAILWAY COMPANY, Appellee.

*Opinion filed June 18, 1919.*

1. PLATS—*when deed of vacation may be executed.* Under sec-
tion 7 of the Plats act a deed of vacation may be executed by the
owner of the territory within the part of the plat sought to be va-
cated if the vacation does not violate the rights of other proprie-
tors in the plat and does not close or obstruct any public highway
laid out according to law.

2. SAME—*when deed of vacation does not obstruct public high-
ways.* The maker of a plat cannot compel the municipality to ac-
cept the streets and assume the burden of maintaining them, and
unless something is done by the public authorities to indicate an
acceptance of the streets and alleys platted, a deed of vacation
which includes the streets and alleys indicated on the plat does not
close or obstruct public highways "laid out according to law."

APPEAL from the Circuit Court of Winnebago county;
the Hon. OSCAR E. HEARD, Judge, presiding.

DAVID D. MADDEN, for appellants.

FISHER, NORTH, WELSH & LINSCOTT, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of
Winnebago county sustaining a demurrer to and dismissing
a bill in chancery filed by appellants, praying that appellee
be required to remove fences and other obstructions from
certain streets and alleys in Harlem Park subdivision to
the city of Rockford.

The litigation involves the validity of a deed of vaca-
tion to part of the plat of Harlem Park subdivision. The
land, before it was platted into lots, blocks, streets and
alleys, was purchased by W. H. McCutchan, who gave a
mortgage on the tract to secure part of the purchase money.
The mortgage provided that in case the tract of land was

platted into lots and blocks and the mortgagor should sell some of the lots, the mortgagee would release the lots so sold from the lien of the mortgage. In August, 1890, McCutchan and ·wife platted the tract of land into blocks, lots, streets and alleys, which plat was duly acknowledged and recorded. The tract of land abutted the west bank of· Rock river at a place where, as shown by the plat in the record, there is a considerable bend in the river to the east, and blocks 1, 14 and 15 lay farthest east in the bend and next to the river. Strips are shown on the plat of the subdivision running east and west between blocks, as avenue "A," "B," "C" and "D" and Brown avenue. The plat shows these streets, as well as streets both north and south of them, extend east to the river or to Harlem boulevard, which is next to the river bank and runs in a general north and south direction parallel with the river. Blocks 1, 14 and 15 abut west on Belmont street, as shown by the plat. Avenue "C" runs east and west between blocks 14 and 15 and avenue "D" east and west between blocks 1 and 14. Avenue "B" runs east and west along the south end of block 15 and Brown avenue along the north end of block 1, and all the avenues terminate on the east at the river or Harlem boulevard above mentioned. The mortgage given on the tract before its subdivision by McCutchan and wife was foreclosed, except as to lots which had been previously sold. They were not affected by the foreclosure decree. No lots in blocks 1, 14 and 15 had been sold prior to the foreclosure, and at the sale under the foreclosure decree the defendant, the Rockford and Interurban Railway Company, purchased all three of said blocks and subsequently acquired a deed for them. May 9, 1910, defendant filed a vacation deed vacating all that part of the subdivision designated on the plat lying east of the east line of Belmont street, including the portions of avenues "B," "C," "D" and Brown avenue and alleyways east of Belmont street. Complainants each own one or more lots lying west of Belmont

288 — 37

street, which street is not affected by the vacation. Seven of the lots front on the west side of that street. Three of them lie a block further west, and one of them is four blocks west of Belmont street. The deed vacates the ends of all streets and alleys east of Belmont street from Brown avenue on the north to avenue "B" on the south, which would prevent complainants' access to the river by means of these avenues. The territory vacated is only one block wide and three blocks long from north to south, and, as before stated, it lies next to the river, which would still be accessible to complainants either north or south of the vacated territory, but most of them would be required to travel a little farther for that purpose. Defendant was the sole owner of all the lots and blocks sought to be vacated.

Section 6 of chapter 109 of Hurd's Statutes prescribes when, by whom and how an entire plat may be vacated. Section 7 authorizes the vacation of part of a plat by the owner in manner prescribed in section 6, provided the vacation does not abridge or destroy the rights or privileges of other proprietors in such plat, and it is further provided that nothing in said section shall authorize closing or obstructing any public highway laid out according to law. Defendant being the owner of the territory within the part of the plat sought to be vacated, had authority to execute the deed of vacation if it did not violate the rights of other proprietors in the plat, and the vacation did not close or obstruct any public highway laid out according to law. The statute governing this subject has been considered by this court a number of times. (*Littler* v. *City of Lincoln,* 106 Ill. 353; *Heppes Co.* v. *City of Chicago,* 260 id. 506; *Chicago Anderson Pressed Brick Co.* v. *City of Chicago,* 138 id. 628; *Consumers Co.* v. *City of Chicago,* 268 id. 113; *Illinois Western Electric Co.* v. *Town of Cicero,* 282 id. 468.) These decisions render unnecessary and inappropriate further discussion of the construction and meaning of the statute.

Complainants contend their rights as proprietors of lots in the subdivision are violated by vacation of part of the plat; also that the vacation deed purports to vacate streets and alleys, and was illegal for the reason the streets and alleys belonged to the municipality and no action had been taken by the public authorities to vacate them. Complainants are not deprived of ingress to and egress from their lots by the vacation of the stub ends of the streets east of Belmont street. Their access to the river is only affected to the extent that instead of passing east through the vacated premises they are required to travel a little farther and reach the river north or south of the vacated territory. It is not claimed there is any bridge across the river reached by any of the vacated streets or that the land on the other side of the river has ever been platted. "The rights or privileges of other proprietors in the plat which the statute protects are necessarily legal rights and privileges, and such parties cannot, therefore, be affected by the closing of streets not adjacent to their property nor directly affording access thereto and egress therefrom." *Littler* v. *City of Lincoln, supra.*

It is not alleged in the bill or claimed in argument that the streets and alleys vacated were ever improved by the public authorities or that they had done anything to indicate acceptance of them as streets and alleys. The owner could not compel the municipality to accept the streets and assume the burden of maintaining them, but, as a matter of law, there must be an acceptance before the fee will pass to the city. (*Heppes Co.* v. *City of Chicago, supra.*) The streets and alleys vacated by the deed were not public highways laid out according to law. (*Chicago Anderson Pressed Brick Co.* v. *City of Chicago, supra.*) A fair and reasonable construction of the deed includes not only the streets and alleys, but all the property belonging to defendant in that part of the plat vacated.

The decree of the circuit court is affirmed.

*Decree affirmed.*