WILLIAM KRUEGER *et al.*, Plaintiffs and Counterdefendants-Appellees, v. EDWIN L. OBERTO *et al.*, Defendants and Counterplaintiffs-Appellants.

Second District   Nos. 2—98—1611, 2—98—1637 cons.

Opinion filed December 29, 1999.

Michael Gilman, of O'Brien, O'Rourke & Hogan, Glen T. Keysor and Robert H. Lang, both of Fagel & Haber, both of Chicago, and John W. Quinn, of Churchill, Baumgartner & Quinn, Ltd., of Grayslake, for appellants.

Marshall N. Dickler and James A. Slowikowski, both of Marshall N. Dickler, Ltd., of Arlington Heights, for appellees.

JUSTICE McLAREN delivered the opinion of the court:
The defendants, Edwin L. and Annette B. Oberto and Michael

Werchek and Werchek Builders, Ltd., appeal the trial court's ruling in a preliminary and permanent injunction action enjoining the defendants from subdividing a parcel of property into three lots and building single-family residences on each lot. We reverse.

The following facts are taken from the pleadings and attached documents. In the 1950s, Francis C. and Adelaide Paradise (the Paradises) subdivided a parcel of land in Libertyville, Illinois, and created a subdivision named Paradise Park Estates (Paradise Park). The plat of subdivision was recorded in the Lake County recorder of deeds office on April 20, 1957. The plat shows restrictions pertaining to easements and building line setbacks. The plat also shows 34 lots. All of the lots are approximately one-half an acre each except for lot 34, which is approximately three acres (six times as large as the other lots). The plat shows that lot 34 does not have access to the two subdivision roads.

Subsequently, the Paradises transferred their interests in Paradise Park to a land trustee; this transfer was recorded on April 20, 1957. The land trustee then transferred lots 24 and 34 by a trustee deed back to the Paradises; this transfer was recorded on June 8, 1957.

The land trustee then conveyed other lots of Paradise Park containing restrictive covenants. The deeds were recorded as follows: lot 4, conveyed back to the Paradises, recorded on September 17, 1957, showing no protective covenants; lot 4, conveyed to a third party, containing the protective covenants at issue, recorded on October 10, 1957; lots 15, 16, and 17, recorded on November 20, 1957, containing protective covenants; and lots 2, 5, 6, 12, 14, 21, 25, 26, and 27, recorded on December 30, 1958, also containing protective covenants. All of the deeds noted above, except for the conveyance of lot 4 from the trustee to the Paradises, included the following restriction:

"PROTECTIVE COVENANTS

The following covenants and restrictions shall run with the land and be binding on all lot owners in this subdivision and all persons claiming under them *** :

1. All lots in this subdivision shall be used exclusively for residential purposes.
***
3. All residences constructed in this subdivision shall include a two-car attached garage.

4. No more than one structure may be erected on any lot in this subdivision.
* * *
8. These covenants may be enforced by any or all of the lot owners by proceedings at law or in equity against violators either to restrain violations or for damages."

Subsequently, defendants Edwin L. and Annette B. Oberto (the Obertos) acquired lot 34 from the Paradises by a warranty deed, recorded in the Lake County recorder of deeds grantor-grantee index on July 17, 1959. The title report issued to the Obertos from Chicago Title Insurance Company showed no protective covenants encumbering lot 34. The deed stated that the Obertos' interest was subject only to the subdivision and utility easements of record.

Sometime before March 1988, the Obertos entered into a contract to sell lot 34 to defendants Michael Werchek and Werchek Builders (Werchek), who proposed to subdivide lot 34 into three lots and build single-family residences on each of the lots. On March 2, 1998, the plaintiffs, William and Audrey Krueger, Terrence J. and Debra R. Brady, Patrick and Paula Lubenow, Michael and Beth McNamara, Ruth Prest, Jerry and Danielle Quist, Kathleen and Walter Osmond, Jr., Kevin and Kimberly Gherlone, Clifton Stewart, Roberta Bernard, Susan MacCauley, Pat and George R. Bell, Jr., and Robert W. and Mildred J. Vehlow, filed a two-count complaint seeking preliminary and permanent injunctions. Count I alleged that the protective covenants listed above applied to lot 34 and sought a preliminary and permanent injunction to order the defendants to comply with the protective covenants allowing only one single-family structure on lot 34 and prohibiting the resubdivision of lot 34 and construction of a road. Count I also sought a declaration that the building of more than one single-family structure on lot 34 was prohibited by the plat of subdivision and the protective covenants. Count II alleged violations of the Illinois Municipal Code (65 ILCS 5/11—13—15 (West 1998)).

On April 2, 1998, the Obertos filed an answer to the plaintiffs' complaint, raising as an affirmative defense that the action was barred by the 40-year statute of limitations set forth in section 13—118 of the Code of Civil Procedure (Code) (735 ILCS 5/13—118 (West 1998)). The Obertos also filed a counterclaim, alleging that the protective covenants were not in their chain of title and seeking a declaration that the protective covenants did not encumber lot 34. Subsequently, the Obertos amended their counterclaim to allege that they did not have either actual or constructive notice of the protective covenants when they bought lot 34.

On March 26, 1998, Werchek filed a motion to dismiss the plaintiffs' complaint pursuant to sections 2—615 and 2—619 of the Code. 735 ILCS 5/2—616, 2—619 (West 1998). Werchek asserted that the protective covenants did not apply to lot 34, the plaintiffs waived any right to enforce the protective covenants because the plaintiffs had violated them, there was no general plan for Paradise Park, the protective covenants did not prohibit the proposed development, and

the action was barred by the 40-year statute of limitations (735 ILCS 5/13—118 (West 1998)). In support of its motion, Werchek attached, *inter alia*, copies of the land trustee's deed conveying lots 24 and 34 to the Paradises and the deed conveying lot 34 to the Obertos. Regarding count II of the plaintiffs' complaint alleging violations of the Municipal Code, Werchek attached an affidavit of defendant Michael Werchek. The affidavit stated that lot 34 consisted of three acres, that the average acreage of the other lots in Paradise Park was half an acre, and that each lot of the proposed development would exceed this size.

On April 7, 1998, the plaintiffs filed a two-count "Amended First Amended Complaint" against the defendants, seeking a preliminary and permanent injunction requiring the defendants to comply with the protective covenants permitting only one single-family structure on lot 34. Count I alleged that the protective covenants listed above applied to lot 34, the Obertos had actual or constructive notice of the covenants prior to their contract to sell lot 34 to Werchek, and the protective covenants were part of a general plan for Paradise Park. Count II alleged that the acts of the defendants violated the Municipal Code.

Subsequently, the plaintiffs filed a response in opposition to Werchek's motion to dismiss. In support of their response, the plaintiffs attached an affidavit of Kathleen Ryg, the current chief deputy recorder of deeds for Lake County. In her affidavit, Ryg stated that Lake County maintained an index of recorded plats of subdivisions and a "public index of restrictions, covenants and conditions," which listed the recorded restrictions, covenants, and conditions of Paradise Park. This index of restrictions, covenants, and conditions listed the restrictions under document No. 1015928, containing the deed for lots 2, 5, 6, 12, 14, 21, 25, 26, and 27, recorded on December 30, 1958. This document cross-referenced document No. 968150, containing the deed for lot 4, recorded on October 10, 1957.

The plaintiffs' response also contained the affidavit of Dale Kolber, an attorney and former title examiner, title officer, and office counsel for Chicago Title Insurance Company. Kolber stated that he began working for the title company in 1966. He further stated that title examiners followed a custom and practice that included an examination of the "first deed out" (the first deed sold from a subdivision developer to another) to determine whether any covenants, conditions, or restrictions of record applied to all lots of a subdivision.

On April 22, 1998, the trial court denied Werchek's motion to dismiss. The court stated that the deed for lot 4 (recorded on October 10, 1957) containing the protective covenants was the "first deed out," that the conveyance to the Obertos occurred on July 16, 1959,

by which time "the public index of restrictions, covenants and conditions" maintained by the Lake County recorder listed the recorded restrictions, covenants, and conditions of Paradise Park. Therefore, the court reasoned, the Obertos had actual or constructive notice of the protective covenants when they bought lot 34. The trial court also stated that all the deeds for the Paradise Park lots, except for lots 24 and 34, contained the protective covenants and that there was a general plan for Paradise Park, even though it was not articulated on the plat of subdivision. The trial court also denied Werchek's section 2—619 motion based on the statute of limitations defense.

On May 1, 1998, Werchek filed an answer to the plaintiffs' complaint, a two-count counterclaim, and a motion to reconsider its ruling on count I. On July 21, 1998, the trial court denied Werchek's motion to reconsider its ruling regarding count I of the plaintiffs' complaint but dismissed count II of the plaintiffs' .complaint alleging violations of the Municipal Code.

Count I of Werchek's counterclaim sought a declaration that lot 34 was not encumbered by the protective covenants. Count II sought a mandatory injunction ordering the plaintiffs to refrain from violating the protective covenants.

On August 18, 1998, the plaintiffs filed a motion for judgment on the pleadings. This motion was subsequently amended on September 22, 1998, becoming a motion for summary judgment on count I of the plaintiffs' complaint.

On September 8, 1998, the Obertos filed a motion requesting the court to hold that its orders and findings of April 22 and July 21, 1998, did not apply to them or, in the alternative, to vacate those orders. In support of their motion, the Obertos attached the affidavits of Robert De Reu, Dale Kober, and Arthur Fedder, as well as the deed for lot 34 to the Obertos, the deeds to lots 24 and 34 to the Paradises from the land trustee, the deed to lot 4 to the Paradises from the land trustee recorded on September 17, 1957 (without the protective covenants at issue), and then re-recorded on October 10, 1957 (with the protective covenants at issue), and the plat of the Paradise Park subdivision.

Arthur Fedder, an attorney licensed to practice law in Illinois, stated that he was employed by Chicago Title Insurance Company from 1967 through 1998. He examined title to property and, based upon such examinations, made underwriting decisions related to the issuance of title insurance. Fedder stated that, to determine whether any covenants or restrictions applied to a specific lot of a subdivision that were not shown on the plat or declaration referenced in a deed, he would look at the first deed out of the subdivision *for the specific lot*

to determine whether any restrictions or covenants applied to that lot. Fedder was not aware of any practice of the Chicago Title Insurance Company in which the first deed out of *any* lot of a subdivision was examined to determine whether any restrictions or covenants applied to the specific lot in question.

Robert DeRue, a former employee of the Lake County recorder's office who began working there in 1959, stated that the "public index of restrictions, covenants, and conditions," described by Ryg in her affidavit, was not created until 1962. He described the index as a flip file containing an alphabetical listing of subdivisions and covenants and restrictions for the subdivision.

The Obertos argued that the affidavits established that the "public index of restrictions, covenants, and conditions" was not created until 1962; that neither the "public index of restrictions, covenants and conditions" nor the loose-leaf binder which preceded it provided the Obertos with constructive notice; that no "first deed out" rule existed but it was merely the custom and practice of a title company and could not supplant Illinois law providing that a purchaser of real property takes his interest subject only to matters shown in the direct chain of title revealed in the grantor/grantee index kept by the local recorder of deeds; that if such a rule existed it did not apply to them because the first deed out from the land trustee for lot 4 was initially recorded without the protective covenants; and that a general plan did not dispense with the requirement that such a scheme must be in the direct chain of title of the lot at issue. The Obertos also adopted the other arguments made in Werchek's motion to dismiss regarding the plaintiffs' violations of the protective covenants at issue and the lack of a general plan.

On September 22, 1998, the plaintiffs amended their motion on the pleadings with a motion for summary judgment on count I of their first amended complaint and the defendants' counterclaim. In support of their motion, the plaintiffs attached another affidavit of DeRue. In this affidavit, DeRue stated that prior to 1962 the Lake County recorder's "public index of restrictions, covenants, and conditions" was contained in a loose-leaf binder until it was reorganized and transferred to the flip file system in 1962. DeRue also stated that, prior to working for the Lake County recorder, he worked for Chicago Title Insurance Company. He stated that, if no restrictions appeared in the deeds to a particular lot of a subdivision or the plat of subdivision, one would check the first deed or deeds out from the developer of the subdivision to see if any restrictions in those deeds applied to all the lots in the subdivision.

On September 30, 1998, the Obertos filed a response to the

plaintiffs' motion on the pleadings and a cross-motion for summary judgment on count I of the plaintiffs' complaint, adopting Werchek's cross-motion for summary judgment. The motion essentially repeated the arguments made in their motion to vacate. In support of their motion, the Obertos attached the affidavits of Arthur Fedder and Robert DeRue.

In his third affidavit, DeRue explained that the loose-leaf binder containing subdivision restrictions and covenants prior to 1962 was an informal book furnished to the Lake County recorder by a local title company. DeRue stated that sometimes a restriction that was contained in a deed was omitted from the loose-leaf binder.

On October 2, 1998, the plaintiffs filed a reply to the Obertos' response, supporting the plaintiffs' motion for summary judgment. The plaintiffs argued that, under the "general plan" theory, lot 34 was subject to the protective covenants, that the "first deed out" rule established that lot 34 was encumbered by the protective covenants, and that the Obertos had a duty to investigate whether any protective covenants encumbered lot 34, regardless of whether such restrictions were in the chain of title.

After hearing arguments on the motion, the trial court denied all of the defendants' motions, granted the plaintiffs' motion for summary judgment and requested the parties to draft and present a written order. The trial court rejected the Obertos' proposed written order and entered an order on October 23, 1998, finding that the Obertos had constructive notice of the restrictive covenants when they acquired the property; the re-recorded deed for lot 4, containing the protective covenants, was the first deed out; there was a general plan for the subdivision that applied to lot 34; the restrictive covenants applied to lot 34; and the proposed development of lot 34 would violate the restrictive covenants. The trial court ordered the defendants to comply with the restrictive covenants and enjoined them from erecting any new residential structure so as to create more than "one single residence" on lot 34. On November 18, 1998, the trial court dismissed count II of Werchek's counterclaim alleging that the plaintiffs had breached the restrictive covenants. The defendants filed timely separate notices of appeal (Obertos, No. 2—98—1611; Werchek, No. 2—98—1637). The separate appeals have been consolidated.

On appeal, the defendants argue, *inter alia*, that the trial court erred by denying their motion for summary judgment and granting the plaintiffs' motion for summary judgment, because the Obertos were *bona fide* purchasers for value of lot 34 who purchased the property without notice of the restrictive covenant at issue. The plaintiffs argue that the restrictive covenants apply to lot 34 because the

defendants had notice of the restrictive covenants and the restrictions were part of a general plan for Paradise Park, which included lot 34.

■ Initially, we address the plaintiffs' motion to dismiss the defendants' appeal, alleging that the defendants no longer have an interest in lot 34 and, thus, the appeal is moot. The defendants claim that they have a sufficient interest in the property. The motions to dismiss the appeal, the defendants' reply, and the supporting documents reveal the following. The Obertos conveyed lot 34 by warranty deed to third parties on May 18, 1999, but the defendants retained their interests in lot 34. A contract between Werchek and the third parties provided that, if Werchek prevailed in this litigation, the third parties agreed to sell back part of lot 34 to Werchek. Further, the Obertos and Werchek entered into a contract dated January 15, 1999, wherein the parties agreed that Werchek would pay the Obertos additional money for the sale of lot 34 based on the outcome of this appeal (an additional $95,000 if lot 34 can be divided into two lots and an additional $125,000 if lot 34 can be divided into three lots). Thus, the outcome of this litigation will affect the amount of additional money, if any, Werchek must pay the Obertos. In light of the impact a determination of this appeal will have on the rights of the defendants under the contracts, we deem the issues on appeal in this case are not moot. See *Smith v. Intergovernmental Solid Waste Disposal Ass'n*, 239 Ill. App. 3d 123, 134 (1992). Accordingly, the plaintiffs' motion to dismiss this appeal is denied. We now address the merits of the appeal.

■ Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions, when viewed in a light most favorable to the nonmoving party, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *In re Estate of Rennick*, 181 Ill. 2d 395, 401 (1998). Although summary judgment is encouraged to aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should thus be allowed only when the movant's right is clear and free from doubt. *Olson v. Etheridge*, 177 Ill. 2d 396, 404 (1997). While a plaintiff need not prove his case during summary judgment, he must present some evidentiary facts to support the elements of his cause of action. *Benamon v. Soo Line R.R. Co.*, 294 Ill. App. 3d 85, 87 (1997). Thus, summary judgment in favor of the defendant is appropriate where the plaintiff has failed to establish an essential element of his cause of action. *Murphy v. General Motors Corp.*, 285 Ill. App. 3d 278, 279 (1996). However, we construe all reasonable inferences to be drawn from the facts in a light most favorable to the nonmoving party. *Prairie v. University of Chicago Hospitals*, 298 Ill. App. 3d 316, 327 (1998). We review a trial court's decision to grant summary judgment *de novo*. *Rennick*, 181 Ill. 2d at 401.

The defendants first argue that the Obertos took their fee simple interest in lot 34 free and clear of the restrictive covenants at issue because they did not have actual or constructive notice of them. The plaintiffs assert that the Obertos had constructive notice of the restrictions because the "first deed out" contained the restrictions and the restrictions were recorded in the "public index of restrictions and conditions." We agree with the defendants.

■ It is well established that the burden of proof is upon the person charging notice. *Reed v. Eastin*, 379 Ill. 586, 592 (1942). Constructive notice of an encumbrance arises only when the encumbrance is in the chain of title. *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1039 (1996). An encumbrance will be in the chain of title only when it is recorded in the grantor-grantee index of the county in which the property lies. See *Skidmore, Owings & Merrill v. Pathway Financial*, 173 Ill. App. 3d 512, 514 (1988). The grantor-grantee index is the legal record required to be maintained by the recorder. 55 ILCS 5/3—5025 (West 1998); Ill. Rev. Stat. 1983, ch. 30, pars. 29, 30; *Landis v. Miles Homes, Inc.*, 1 Ill. App. 3d 331, 335 (1971). Thus, recording outside of the grantor-grantee index in other indices is recording merely for convenience and does not operate to give constructive notice to subsequent purchasers. See *Skidmore*, 173 Ill. App. 3d at 515.

■ We recognize that the restrictive covenants at issue were contained in recorded deeds to other lots in the subdivision. However, it is uncontroverted that the restrictive covenants were not contained on the recorded deed conveying lot 34 to the Obertos or any other previously recorded deed conveying lot 34. Thus, the plaintiffs have failed to establish that the restrictive covenants at issue here were in the chain of title to lot 34.

Further, we recognize that the restrictive covenants at issue were recorded in the "public index of restrictions and conditions" as to lots in the subdivision other than lot 34. However, the "public index of restrictions, covenants, and conditions" was not a statutorily mandated index. Thus, its contents did not impart constructive notice on the Obertos. See *Landis*, 1 Ill. App. 3d at 335 (a prospective purchaser of real estate is not chargeable with notice of that which appears in any other record but the grantor-grantee index). The plaintiffs' claim that the "public index of restrictions, covenants, and conditions" was mandated by section 3—5025(6) of the Counties Code (55 ILCS 5/3—5025(6) West 1998)) is erroneous. The Counties Code requires "[a]n index to recorded maps, plats and subdivisions" to be organized by range, township, section, or quarter section. 55 ILCS 5/3—5025(6) (West 1998). Nothing in the Counties Code requires an index of *restrictions* listed alphabetically by subdivision name; thus,

the plaintiffs failed to establish that the "public index of restrictions, covenants, and conditions" was a statutorily mandated index kept for reasons other than convenience.

Further, the plaintiffs failed to establish that this index contained the restrictions at issue when the Obertos acquired lot 34. The affidavits established only that from 1959 to 1961 a list of restrictions was contained in a loose-leaf binder in the Lake County recorder's office. However, DeRue stated, without contradiction, that sometimes a restriction that was contained in a deed was omitted from the loose-leaf binder. Thus, the plaintiffs have failed to establish that the restrictions contained in the "public index of restrictions, covenants, and conditions" constituted constructive notice to the Obertos. The plaintiffs reply that there is no evidence that the "public index of restrictions, covenants, and conditions" did not contain the restrictions at issue. This reply ignores that it is the plaintiffs and not the defendants who bear the burden of establishing notice. See *Reed*, 379 Ill. at 592.

■ The plaintiffs argue and the trial court ruled that the defendants were on notice because the "first deed out" (the deed to lot 4 sold from the Paradises to another party) contained the restrictive covenants and was recorded before the Obertos acquired lot 34. The affidavit attached to the pleadings established that this "first deed out" concept was merely a practice of title examiners. In fact, this alleged "first deed out" rule is contrary to the law, which provides that a party will not be charged with constructive notice of an interest in property unless it appears on record within the chain of title. See *Housing Authority v. Young Men's Christian Ass'n*, 112 Ill. App. 3d 65, 70 (1983). Thus, the trial court erroneously ruled that the restrictive covenants contained in the deed for the conveyance of lot 4 (recorded in October 1957) provided notice to the Obertos.

The plaintiffs cite no authority to support their allegation that restrictive covenants contained in the first deed out binds third parties whose deeds did not contain the restrictions. *Hutchinson v. Ulrich*, 145 Ill. 336 (1893), cited by the plaintiffs, is not dispositive. Although the *Hutchinson* court held that an easement contained in the first deed out from a subdivision developer applied to all subsequent purchasers of the remaining lots, the restrictions were in the chain of title of the property at issue, unlike the case at bar. *Hutchinson*, 145 Ill. at 341. Further, unlike the case at bar, the first deed out in *Hutchinson* provided that the developer expressly agreed to include the restrictions in all subsequent deeds for the remaining lots. *Hutchinson*, 145 Ill. at 341. Thus, this case is not controlling here.

■ Similarly, the plaintiffs assert that the defendants were on in-

quiry notice of the restrictive covenants because the deed to lot 34 identified that it was part of the Paradise Park subdivision. However, it was uncontroverted that the Paradise Park subdivision plat did not contain the restrictive covenants at issue. Thus, this argument fails.

■ The plaintiffs also assert that a purchaser of land can be charged with constructive notice of a restrictive covenant regardless of whether the restrictive covenant was recorded in the grantor-grantee index. This argument relies on the premise that the restrictive covenants contained in the first deed out and the "public index of restrictions, covenants, and conditions" included lot 34. It is uncontroverted that the first deed out, for lot 4, contained no information regarding lot 34. Similarly, the information contained in the "public index of restrictions, covenants, and conditions" did not specify or make specific reference to lot 34. Thus, the trial court erred by ruling that the defendants had constructive notice of the restrictive covenants at issue.

The defendants also argue that the trial court erred by ruling that the restrictive covenants were enforceable against lot 34 because the developer created a general plan for Paradise Park. The defendants assert that there was no general plan and that, even if there was, it was not enforceable against lot 34 because the restrictive covenants were not recorded against lot 34. The plaintiffs argue that there was a general plan and that lot 34 was bound by the restrictive covenants at issue regardless of notice.

■ ■ A court may enjoin the owners of property from a proposed development on the grounds of an implied restrictive covenant if a general plan of development was instituted at the time of subdivision. *Cornell v. County of Du Page*, 58 Ill. App. 3d 230, 234 (1977). It is appropriate for a court to find the existence of a general plan of development where a tract is subdivided into lots conveyed to separate purchasers subject to identical conditions designed to operate as inducements to the purchase of the lots and to create reciprocally enforceable rights in the nature of an "easement of incorporeal hereditament" in the other lots of the subdivision. *Pasulka v. Koob*, 170 Ill. App. 3d 191, 205 (1988); *Wayne v. Baker*, 6 Ill. App. 2d 369 (1955). However, restrictions that interfere with the free use of property are not favored in law, and all doubts must be resolved in favor of the free use of property without restrictions. *Gerber v. Hamilton*, 276 Ill. App. 3d 1091, 1093 (1995); *Pasulka*, 170 Ill. App. 3d at 205. Thus, a general plan will not be enforced where its enforcement "would be a great hardship on the owner and of no benefit to the plaintiff." *Housing Authority v. Church of God*, 401 Ill. 100, 108 (1948). In determining whether a general plan exists, a court should consider whether (1) the

restrictions are included in all deeds to the subdivision; (2) the restrictions have been previously violated; (3) the burdens imposed are generally equal and for the mutual benefit and advantage of all lot owners; and (4) notice of the restrictions is given in the recorded plat of subdivision. *LoBianco v. Clark*, 231 Ill. App. 3d 35, 38 (1992).

■ All but the second factor weigh in favor of the defendants. Regarding the first factor, it is uncontroverted that the restrictions at issue were not contained in the deed to lot 34. Regarding the third factor, the burdens are not equal because lot 34 is approximately six times as large as the other lots. Thus, restricting lot 34 to only one residence is a greater burden to its owners than to the other lot owners. Regarding the fourth factor, it is uncontroverted that the restrictive covenants at issue were not contained in the recorded plat of subdivision. Regarding the second factor, we recognize that the restrictions at issue have not been previously violated and that no other lot has more than one single-family home. However, in light of the other factors, the plaintiffs failed to establish that the Paradises intended to create a general plan prohibiting the further subdivision of lot 34. The record reveals that all lots in Paradise Park except lot 34 are approximately one-half an acre, each containing no more than one single-family residence. Lot 34 was over three acres in size. Thus, even if there was a general plan that applied to lot 34, it would permit the further subdivision of lot 34 to a minimum of one-half-acre lots, each containing a maximum of one single-family residence.

Further, any general plan that contained the restrictions at issue would not apply here because the Obertos and Werchek took without notice. See *McGovern v. Brown*, 317 Ill. 73, 79 (1925). It is well established that restrictions that are part of a general plan will not be enforceable against an owner who is not chargeable with either actual or constructive notice of such restrictions. See *Taubert v. Fluegel*, 122 Ill. App. 2d 298, 302 (1970). Thus, the trial court erred by ruling that a general plan existed which prohibited the defendants' proposed plan. As stated, the restrictions at issue in this case did not apply to lot 34 because the deeds conveying the lot to the defendants did not contain the restrictions, the restrictions were not in the chain of title, and the defendants had neither constructive nor actual notice of the restrictions at issue. Accordingly, the trial court erred by granting the plaintiffs' motion for summary judgment and denying the defendants' motion for summary judgment.

We also note that the plaintiffs have failed to cite any authority and our research has not uncovered any case in which a restrictive covenant applied to property even though the restrictions were not in the chain of title and the owners took without notice. In *LoBianco v.*

*Clark*, 231 Ill. App. 3d 35 (1992), the only case the plaintiffs cite in which a court applied the "general plan" theory to restrict a property owner's use, the restrictive covenants were in the chain of title of the property at issue. See *LoBianco*, 231 Ill. App. 3d at 37. Thus, this case is not dispositive here. Similarly, in *Hutchinson*, also cited by the plaintiffs, the restrictive covenants were in the chain of title of the property at issue. *Hutchinson*, 145 Ill. at 341. Thus, these cases are not dispositive here.

The plaintiffs argue that defendant Werchek had notice of the restrictive covenants from the title report prepared on behalf of Werchek. This title report was not included in the appellate record. However, this court granted the plaintiffs' motion to supplement the record with this document. Now, addressing the merits of the plaintiffs' argument, it is clear that it is based on the theory that the restrictive covenants apply to lot 34 because the restrictive covenants were part of a general plan that included lot 34. Since we have already decided that lot 34 was not subject to the restrictive covenants at issue based on any of the plaintiffs' theories, the plaintiffs' argument fails.

Finally, the defendants argue that the trial court erred by ruling that the statute of limitations (735 ILCS 5/13—118 (West 1998)) did not bar the plaintiffs' claim. Section 13—118 of the Code of Civil Procedure (Code) bars actions based upon any claim arising or existing more than 40 years before the commencement of such action to establish any interest therein or claim thereto. (735 ILCS 5/13—118 (West 1998). We note that the cases cited by the defendants to support their argument (*Exchange National Bank v. Lawndale National Bank*, 41 Ill. 2d 316 (1968); *Harris Trust & Savings Bank v. Chicago Title & Trust Co.*, 84 Ill. App. 3d 280 (1980)) do not relate to restrictive covenants. Because we have already determined that the plaintiffs failed to establish that the restrictive covenants at issue apply to lot 34, we do not feel the need to decide whether section 13—118 of the Code applies to restrictive covenants. For the same reason, we need not address the defendants' arguments regarding their counterclaim alleging that the plaintiffs breached the restrictive covenants.

The judgment of the circuit court of Lake County is reversed.

Reversed.

THOMAS and GALASSO, JJ., concur.