RUSSELL RUBLE *et al.*, Plaintiffs-Appellants, v. K.J. STURHAHN *et al.*, Defendants-Appellees.

Fourth District No. 4—03—0471

Opinion filed May 19, 2004.

Richard D. Frazier (argued) and Scott A. Sabin, both of Metnick, Cherry & Frazier, of Springfield, for appellants.

Michael A. Myers (argued), of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee K.J. Sturhahn.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In August 1998, plaintiffs, Russell and Patti Ruble (Rubles) and Charles and Denise Booth (Booths) (hereinafter collectively plaintiffs), filed suit against defendants, K.J. Sturhahn and the City of Pittsfield, seeking a declaratory judgment regarding the constitutionality of the zoning reclassification of real property in plaintiffs' residential subdivision. On August 30, 1999, plaintiffs filed an amended complaint also alleging that Sturhahn violated restrictive covenants and provisions in the Plat Act (765 ILCS 205/0.01 through 14 (West 1998)). In October 1999, the trial court dismissed the portions of plaintiffs' complaint alleging Sturhahn violated restrictive covenants and the Plat Act. On March 30, 2000, the court granted summary judgment in favor of Sturhahn, finding the zoning reclassification constitutional. On June 14, 2000, the court denied plaintiffs' motion to reconsider. On appeal, this court affirmed the trial court's judgment granting summary judgment, finding the rezoning classification constitutional, and reversed the trial court's dismissal of counts II and III, finding plaintiffs had alleged sufficient facts to state a cause of action under the Plat Act and to state a cause of action that Sturhahn violated an implied restrictive covenant. We remanded the cause for further proceedings. *Ruble v. Sturhahn*, No. 4—00—0616 (August 24, 2001) (unpublished order under Supreme Court Rule 23) (hereinafter *Ruble*).

On October 10, 2002, the trial court granted summary judgment in favor of Sturhahn on counts II and III. Plaintiffs appeal, arguing the trial court erroneously granted summary judgment in favor of Sturhahn. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

In 1955, the City of Pittsfield approved and adopted Ordinance 543, which established a planning commission to prepare a comprehen-

sive plan for guidance of the development and direction of the growth of the city and its contiguous territory. City of Pittsfield Ordinance No. 543 (adopted September 6, 1955). In 1982, as part of this plan, the City of Pittsfield approved and adopted Ordinance 1013, annexing the tract of land that became the subdivision containing plaintiffs' real property and the 13-acre tract of land later purchased by Sturhahn. City of Pittsfield Ordinance No. 1013 (adopted October 19, 1982).

Plaintiffs all own residential lots in the Pittsfield residential neighborhood platted and recorded as Rolling Meadows Third Addition. In 1987, the Rubles purchased one lot immediately to the south of the property in dispute and built a house thereon. In 1993, the Booths purchased two separate, but adjoining, lots southeast of the real property in dispute. No restrictive covenants were recorded in plaintiffs' deeds.

In 1998, Sturhahn purchased the 13-acre tract of land presently in dispute (hereinafter Sturhahn's property). At that time, the entire subdivision, including Sturhahn's property, was zoned as R-2 (family residence) strictly for residential use. After his purchase, Sturhahn sought and obtained a zoning change from the zoning commission, which reclassified Sturhahn's property as B-3 (highway business district) and enabled Sturhahn to construct a commercial building to serve as a large animal veterinary clinic. Thereafter, Sturhahn vacated the plat to the subdivision and replatted the 13 acres that he purchased into a new subdivision called Sturhahn Timber Creek, containing 11 lots, each being in excess of one-half acre. Plaintiffs' ingress and egress was unaffected by Sturhahn's new plans.

The property adjacent to the entire northern boundary of Sturhahn's property is zoned B-3 and is presently used for several commercial purposes. Adjacent to the Sturhahn property in the northwest corner is a Wal-Mart store. Directly to the west of Wal-Mart, across the street, is a grocery store. Adjacent to the Sturhahn property, in the northeast corner, is an outdoor live animal auction business. On the eastern edge of Sturhahn's property is the Pike County Housing Authority, which is zoned R-3 (multifamily residence). Along the southern boundary of Sturhahn's property is the remainder of Rolling Meadows Third Addition, in which plaintiffs' houses are located and which is still zoned R-2.

In August 1998, plaintiffs filed a single-count complaint for declaratory judgment objecting to the zoning reclassification of real property purchased by Sturhahn in plaintiffs' residential subdivision. Plaintiffs' original complaint asked the trial court to declare the zoning ordinance to be "spot-zoning, arbitrary, capricious, unconstitutional, and thus invalid."

In August 1999, the trial court granted plaintiffs' motion for leave to file an amended complaint in which plaintiffs added two additional counts, arguing that (1) the trial court should enjoin the zoning reclassification as an improper vacatur of the existing plat in violation of the Plat Act (765 ILCS 205/0.01 through 14 (West 1998)) and (2) such zoning reclassification violates the implied restrictive covenant requiring owners to use property owned within the Rolling Meadows Third Addition subdivision for residential purposes. In October 1999, defendant City of Pittsfield filed a motion to dismiss counts II and III of plaintiffs' amended complaint. That same month, the trial court dismissed counts II and III of the amended complaint.

In November 1999, Sturhahn filed a motion for summary judgment as to count I, which defendant City of Pittsfield adopted. In December 1999, the trial court conducted a hearing on Sturhahn's motion for summary judgment. On March 30, 2000, the trial court granted the motion for summary judgment. On April 27, 2000, plaintiffs filed a motion to reconsider the granting of summary judgment and the dismissal of counts II and III. On June 14, 2000, the trial court denied plaintiffs' motion to reconsider. Plaintiffs appealed.

On appeal, plaintiffs argued the trial court erroneously granted summary judgment in favor of Sturhahn and dismissed counts II and III of plaintiffs' complaint. We affirmed the trial court's judgment granting summary judgment, finding that no genuine issue of material fact remained and the trial court did not apply the law incorrectly. We reversed the trial court's dismissal of counts II and III and remanded the cause for further action. As to count II, we found that plaintiffs' claim that they purchased their lots, and improved their lots with residences, in reliance on the representations in the plat that (1) they would be surrounded by other residences and (2) Sunset Drive and Hackney Lane would be located as platted, preventing access to the commercial areas to the north, was sufficient to state a cause of action under the Plat Act. *Ruble*, slip order at 18. As to count III, we found that all the deeds at issue contained some reference to the subdivision and/or plat. As such, plaintiffs pleaded sufficient facts to state a cause of action for the violation of implied restrictive covenants. *Ruble*, slip order at 20.

On September 5, 2002, Sturhahn filed a motion for summary judgment on counts II and III of plaintiffs' amended complaint. On October 10, 2002, a hearing was held on Sturhahn's motion. On December 19, 2002, in an order, the trial court granted summary judgment in favor of Sturhahn, finding no genuine issues of material fact remained as to count II or count III. Specifically, as to count II, violations of the Plat Act, the court found that plaintiffs did not show any violation of the

Plat Act as they were not specially or peculiarly injured by vacation of a portion of the Rolling Meadows Third Addition plat. Further, the court found that plaintiffs did not suffer any deprivation of their legal rights and privileges or show that any public streets had been closed adjacent to their property affecting access of ingress and egress to their property. As to count III, violations of restrictive covenants, the court found there was no general plan of development or implied covenants created in Rolling Meadows Third Addition, no restrictions in deeds given to any lot owner in the Rolling Meadows Third Addition subdivision, no restrictive covenants filed of record against any lot, or any prohibitions placed on the face of the plat restricting the type of land use in the subdivision. On January 15, 2003, plaintiffs filed a motion to reconsider. On April 23, 2003, the trial court denied plaintiffs' motion. This appeal followed.

## II. ANALYSIS

Plaintiffs argue the trial court erred by granting summary judgment in favor of Sturhahn because the court incorrectly interpreted and applied the law.

■ "Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 517, 732 N.E.2d 528, 542 (2000), quoting 735 ILCS 5/2—1005(c) (West 1992). "Accordingly, two questions are presented on review from an order granting summary judgment. The first is whether any genuine issues of material fact remain. The second is whether the trial court correctly interpreted the law." *Farmers Automobile Insurance Ass'n v. Country Mutual Insurance Co.*, 309 Ill. App. 3d 694, 698, 722 N.E.2d 1228, 1231-32 (2000). This court reviews the entry of summary judgment *de novo. Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333, 662 N.E.2d 397, 402 (1996). We consider anew the facts and law related to the case to determine whether the trial court was correct. *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1054, 723 N.E.2d 755, 759 (1999).

### A. The Trial Court Erred in Granting Summary Judgment on Count II

In the present case, the parties agree as to the material facts. Therefore, the only remaining question is whether the trial court correctly interpreted and applied the law in granting summary judgment to Sturhahn on count II. We find the trial court did not correctly interpret and apply the law.

Plaintiffs argue Sturhahn vacated the original plat without their consent in violation of sections 6 and 7 of the Plat Act (765 ILCS 205/6, 7 (West 1998)).

■ Section 6 of the Plat Act states in pertinent part:

"Any plat may be vacated by the owner of the premises at any time before the sale of any lot therein, by a written instrument to which a copy of the plat is attached, declaring it to be vacated. *** When lots have been sold[,] the plat may be vacated in the manner provided in this [s]ection by all the owners of lots in the plat joining in the execution of the writing." 765 ILCS 205/6 (West 1998).

Section 7, in turn, states:

"Any part of a plat may be vacated in the manner provided in the preceding section, and subject to the conditions therein prescribed: Provided, such vacation shall not abridge or destroy any of the rights or privileges of other proprietors in such plat: And, provided, further, that nothing contained in this section shall authorize the closing or obstructing of any public highway laid out according to law." 765 ILCS 205/7 (West 1998).

Section 6 "prescribes when, by whom[,] and how an entire plat may be vacated," whereas section 7 prescribes the procedure for vacating only a portion of the plat. *Sheldon v. Rockford & Interurban Ry. Co.*, 288 Ill. 576, 578, 123 N.E. 549, 550 (1919) (discussing a predecessor to the current section). Therefore, an owner who purchases all the lots in the part of a plat sought to be vacated has the authority to vacate that part of the plat provided such action does not violate the rights of other proprietors in the plat or cause public highways to be closed or obstructed. *Sheldon*, 288 Ill. at 578, 123 N.E. at 550; see also *Chicago Anderson Pressed Brick Co. v. City of Chicago*, 138 Ill. 628, 632, 28 N.E. 756, 756 (1891).

Plaintiffs argue Sturhahn violated their rights in the plat in that (1) he sought and obtained a zoning change allowing him to alter the nature of the plat from residential to commercial, and (2) his new plat altered the configuration of certain streets depicted in the original plat. We agree with plaintiffs' second argument.

Plaintiffs argue they have a right to maintain the residential nature of their neighborhood. They contend this right stems from (1) zoning representations set forth in the plat, (2) City of Pittsfield Ordinance 1013 annexing the property described in the plat as R-2, single-family residential, and (3) oral representations made by the author of the plat that the area was to remain residential. As such, Sturhahn violated the Plat Act when he failed to seek the consent of plaintiffs, whose rights would be injured by the vacation of the plat.

■ Although plaintiffs' plight is sympathetic, they have failed to

cite any authority, and we have found none, for the proposition that one who purchases land in reference to a plat acquires the absolute right to maintain the original zoning of the plat. Rather, zoning is primarily a legislative function. *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46, 145 N.E.2d 65, 68 (1957). "Counties have a right and a duty to maintain their land use through zoning regulations." *Shipp v. County of Kankakee*, 345 Ill. App. 3d 250, 253, 802 N.E.2d 284, 287 (2003). A zoning regulation or ordinance is valid unless a plaintiff proves by clear and convincing evidence that, as applied with respect to their property, the ordinance is arbitrary, capricious, and unreasonable and bears no substantial relation to the public health, safety, or general welfare. *La Salle*, 12 Ill. 2d at 46, 145 N.E.2d at 68. We have previously held that plaintiffs failed to meet this burden. *Ruble v. Sturhahn*, No. 4—00—0616 (August 24, 2001) (unpublished order under Supreme Court Rule 23). Therefore, plaintiffs are without recourse as to the rezoning of a portion of the plat from residential to commercial.

■ Plaintiffs also argue they have a right to have the integrity of the streets and roads depicted in the original plat maintained. Sturhahn counters that he was within his right to vacate these streets and roads under the Plat Act because plaintiffs suffered no special or peculiar damage to their legal rights, no public streets were closed, and no public infrastructure was affected upon vacation of the plat. We disagree.

A party who purchases land in a subdivision with reference to a recorded plat acquires a right to have the streets and alleys remain open to all who would use them. *Bond v. Dunmire*, 129 Ill. App. 3d 796, 805, 473 N.E.2d 78, 85 (1984). Our supreme court summarized the law regarding the rights of property owners in the streets, alleys, and public places laid out in a public subdivision as follows:

"No law is better settled in this [s]tate than that which controls this case. Where the owner of land lays it out in lots and blocks and makes and exhibits a plat thereof showing streets and alleys and sells some of the lots with a clear reference to the plan, the purchaser acquires as appurtenant to the lots every easement, privilege[,] and advantage which the plan represents as belonging to them as a part of the platted territory. This privilege is not limited to the purchaser, but is a right vesting in the purchaser that all persons whosoever, as their occasion may require, may use the streets, alleys[,] and other public places according to their appropriate purposes. The sale and conveyance of lots according to a published plat implies a grant or covenant to the purchaser that streets, alleys[,] and other public places indicated as such upon the

plat shall be forever open to the use of the public, free from all claim of interference of the proprietor inconsistent with such use." *Wattles v. Village of McHenry*, 305 Ill. 189, 192, 137 N.E. 114, 116 (1922).

These rights, which one acquires when purchasing property with reference to a plat, are private rights. *Welter v. Eaton*, 366 Ill. 143, 147, 7 N.E.2d 855, 857 (1937). Therefore, *even if no especial inconvenience or loss is shown*, one who purchases in reference to a plat is entitled, under the law, to demand that, as between him and the author of the plat, and those claiming under the author, the representations made by the plat as to the streets thereon be preserved. *Corning & Co. v. Woolner*, 206 Ill. 190, 199, 69 N.E. 53, 57 (1903). This rule equally applies to platted streets and roads not yet in existence. See *Zearing v. Raber*, 74 Ill. 409 (1874) (discussing applicable principles in 2 Smith's Leading Cases 154 (7th Am. ed.)).

In arguing that plaintiffs have suffered no deprivation of their legal rights, Sturhahn fails to recognize the distinction between vacation of a plat by a public authority and vacation by the author of a plat and his privies. With the former, a plaintiff who does not own land abutting the street sought to be vacated, who is not a party to the proceeding to vacate, and who has only such interest as is possessed by all other members of the public residing in the vicinity cannot maintain an action to prevent vacation of the plat absent a showing that he will suffer special damages not common to the general public. *Eaton*, 366 Ill. at 145-46, 7 N.E.2d at 856. Conversely, an owner of land who purchases in reference to a plat acquires a private right in the plat's representations, which may not be abridged or destroyed by the author of the plat or his privies. Such is the case even if no special damages to the owner of the land have been shown.

■ In this case, the trial court erred in granting summary judgment in favor of Sturhahn, finding plaintiffs had not proved any deprivation of private rights. Plaintiffs bought their property with reference to the original plat. Therefore, plaintiffs have acquired private rights in the streets portrayed in the original plat and are entitled to have those streets preserved. In addition, the undisputed facts show that Sturhahn vacated the original plat and then replatted his property. In doing so, he removed the cul-de-sac at the end of Hackney Lane and reconfigured the layout of Sunset Drive. In addition, Hackney Lane no longer connected to Sunset Drive, only a street option was left open to connect the two. Each of these proposed changes alters the nature of the streets depicted in the original plat. As such, plaintiffs' rights in preserving the integrity of the original plat have been sacrificed, and Sturhahn has violated the Plat Act in not seeking the consent of plaintiffs before vacating the plat.

## B. The Trial Court Properly Granted Summary Judgment on Count III

■ Plaintiffs argue that a general plan of development existed as to the platted land. Therefore, plaintiffs contend, Sturhahn violated implied restrictive covenants in altering and abandoning streets represented in the original plat and in changing the nature of the subdivision from residential to commercial. Sturhahn responds that (1) no general plan of development existed, and (2) he was free to re-plat the streets depicted in the original plat and to use his land for commercial purposes consistent with its rezoning. We have already held that because of the implied covenant created by the plat, Sturhahn is not free to alter the integrity of the streets in the original plat without plaintiffs' consent. However, we agree with the trial court's decision that a general plan of development did not exist as to the residential nature of the subdivision.

Again, the case presents no disputed factual issues. Therefore, the only question is whether the trial court correctly found, as a matter of law, that no implied restrictive covenants existed, and therefore, no general plan of development was proved.

"A court may enjoin the owners of property from a proposed development on the grounds of an implied restrictive covenant if a general plan of development was instituted at the time of subdivision." *Krueger v. Oberto*, 309 Ill. App. 3d 358, 370, 724 N.E.2d 21, 30 (1999). A trial court appropriately finds the existence of a general plan of development "where a tract is subdivided into lots conveyed to separate purchasers subject to identical conditions designed to operate as inducements to the purchase of the lots and to create reciprocally enforceable rights in the nature of an 'easement of incorporeal hereditament' in the other lots of the subdivision." *Krueger*, 309 Ill. App. 3d at 370, 724 N.E.2d at 30-31, quoting *Pasulka v. Koob*, 170 Ill. App. 3d 191, 205, 524 N.E.2d 1227, 1236 (1988). "However, restrictions that interfere with the free use of property are not favored in law, and all doubts must be resolved in favor of the free use of property without restrictions." *Krueger*, 309 Ill. App. 3d at 370, 724 N.E.2d at 31. In determining whether a general plan exists, a trial court should evaluate whether (1) the restrictions are included in all deeds to the subdivision; (2) the restrictions have been previously violated; (3) the burdens imposed are generally equal and for the mutual benefit and advantage of all lot owners; and (4) notice of the restrictions is given in the recorded plat of the subdivision. *Krueger*, 309 Ill. App. 3d at 370-71, 724 N.E.2d at 31.

In this case, no restrictive covenants appear on the face of plaintiffs' deeds. At best, plaintiff Booth's deed shows that the

"conveyance [was] made subject to all restrictions as shown by the plat of said subdivision." The face of the plat itself does not contain any restriction that seeks to maintain the residential nature of the plat. Further, it is unclear if the notation on the plat, "with ordinance," even refers to Ordinance 1013, which states that the plat is zoned R-2 residential. City of Pittsfield Ordinance No. 1013 (adopted October 19, 1982). In addition, no restrictive covenants were filed against any lot in the plat. This evidence is not sufficient to establish plaintiffs' property was conveyed with the restriction that the property only be used for residential purposes.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment granting summary judgment in favor of Sturhahn as to count III of plaintiffs' complaint and reverse the trial court's judgment granting summary judgment in favor of Sturhahn as to count II of plaintiffs' complaint. We remand the case to the trial court for further proceedings.

Affirmed in part and reversed in part; cause remanded.

KNECHT, P.J., and STEIGMANN, J., concur.