THE CHURCH OF CHRIST

*v.*

THE CHRISTIAN CHURCH OF HAMMOND.

*Opinion filed December 18, 1901.*

1. APPEALS AND ERRORS—*in chancery cases the court is presumed to have considered only competent evidence.* In chancery cases a court of review, if it finds sufficient competent evidence in the record to sustain the decree, will affirm the same; notwithstanding improper or incompetent evidence has been admitted, the presumption being that the court considered only proper evidence.

2. DEEDS—*misnomer of a corporation grantee does not necessarily invalidate deed.* Misnomer of a corporation in a grant, by deed, to such corporation does not invalidate the same, when the true name is necessarily to be collected from the instrument or is shown by proper averment.

3. SAME—*when trust created by deed to trustees of "Christian Church" should be enforced in favor of "Church of Christ."*  If a deed is made to three named persons as trustees for "The Christian Church," a court of equity should enforce the trust in favor of the "Church of Christ," where it is shown that the Church of Christ was legally incorporated, that the persons named as trustees in the deed were in fact the trustees of the Church of Christ, and there is no proof that there was any legally organized, or any unorganized, religious society or church having the name "The Christian Church" at the time the deed was made, nor one thereafter legally organized.

APPEAL from the Circuit Court of Piatt county; the Hon. W. G. COCHRAN, Judge, presiding.

This is a bill in equity by appellant, against appellee, to enjoin an action of ejectment, to correct an alleged mistake in a deed and to confirm title to certain church property in the town of Hammond, Piatt county, in the complainant, and for general relief.  On answer by the defendant, and replication, the case was heard upon testimony produced in open court, and a decree rendered denying the relief prayed and dismissing the bill.  The correctness of that decree is questioned upon this appeal.

The jurisdiction of a court of equity to grant the relief prayed is not denied by the appellee, and the only contention on behalf of appellant is that the decree is contrary to the evidence.

Numerous objections were made to the introduction of testimony offered by the defendant, which were reserved to the final hearing, and it is now assigned for error that the court admitted improper evidence.  In chancery proceedings a court of review will look into the record, and if it finds sufficient competent proofs therein to sustain the decree, will affirm the same notwithstanding improper or incompetent evidence may have been received, the presumption being that the court, in its decision, considered only proper and competent evidence.

The bill sets up the organization and incorporation of the Church of Christ, in the village of Hammond, in October, 1882, and the election of John Love, George

193—10

W. Bunyan and Anderson Wacaser as trustees; that on February 9, 1883, John K. Warren and wife and Orlando Powers and wife donated to said church the lots in question, and executed and delivered to the trustees of said Church of Christ a deed thereto, but by mistake the grantees were named, personally, as "trustees for the Christian Church;" that it was the understanding of the grantors of said Church of Christ that the donation was to the corporation known as "The Church of Christ;" that said church expended funds donated to it in erecting a house of worship for the use of the congregation of the Church of Christ, and still maintains a house of worship on said lots for the use of said church; that the three trustees elected for said church expended the money donated by the members of that church in erecting the house, etc.; that when the conveyance was made to the said trustees there was no organization or corporation known or called "The Christian Church of Hammond, Illinois;" that about July 15, 1888, after said conveyance, the fellowship of the Church of Christ was withdrawn from Wacaser and Bunyan, two of said trustees, by which action they ceased to be members of the said church, and that on July 24, 1897, the other trustee, John Love, died, thus leaving a vacancy in the trustees of the entire board; that on July 5, 1898, the Church of Christ made public declaration of the said vacancy of all the trustees, and elected as their successors three others, Edward M. McAtee, Jonathan N. Askins and Charles A. Clark, and filed the proper certificate in the recorder's office of Piatt county; that on December 28, 1886, said Anderson Wacaser (one of the original trustees) resigned his position as trustee; that during the year 1900 one A. H. Harrell and George W. Traxler made, signed and caused to be recorded a paper purporting to be a certificate of the election of George W. Traxler and John R. Howell as trustees of "the so-called Christian Church;" that the said paper does not show a legal organization of the Christian Church of Hammond; that

on August 23, 1901, A. H. Harrell, George W. Traxler and John R. Howell brought suit in ejectment in the name of the Christian Church of Hammond, Illinois, to obtain possession of said lots and the house of worship erected thereon; that at the time of the pretended election of Traxler and Howell to fill vacancies in the board of trustees there was no corporation in Piatt county known as "The Christian Church of Hammond, Illinois;" that the congregation comprising the Church of Christ now occupies, and have continuously occupied, the premises described in said suit of ejectment since 1883; alleges the death of John K. Warren since making the deed, leaving Emma P. Warren his sole legatee, and alleges the death of Charlotte Powers, leaving Orlando Powers her surviving husband; makes Emma P. Warren and Orlando Powers defendants, who were defaulted upon the hearing and the bill taken as confessed against them.

The answer denies substantially all the allegations of the bill, and avers that the corporation formed in Hammond in 1882 adopted "The Christian Church of Hammond, Illinois," as its corporate name, and elected Love, Wacaser and Bunyan trustees. It does not, however, allege that any certificate of organization of the Christian Church of Hammond, Illinois, was filed with the recorder of deeds of the said county. It avers that the Christian Church circulated the subscription papers for donations to procure the lots and build the house of worship, and substantially that all the acts claimed to have been performed by the Church of Christ, as set forth in the bill, were performed by the Christian Church of Hammond, Illinois. It denies that there was any mistake in the name of the grantee in the deed for the lots, but alleges that the Church of Christ got the use of the house to hold meetings in, from the Christian Church trustees, and afterwards, about January 1, 1900, Clark, McAtee and Askins, claiming to be the officers of the Church of Christ, changed the locks and fastenings on the house of

worship to prevent the trustees of the Christian Church from gaining entrance to it, and have since maintained exclusive control and possession of the house; avers that the Christian Church of Hammond is the legal and equitable owner of the house; that they demanded possession and commenced suit in ejectment to secure possession, and were enjoined, and denies complainant is entitled to any relief.

LODGE & HICKS, for appellant.

REED & EDIE, for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

In our view of the record the controlling question in the decision of the case must be, in which of the claimants, the Church of Christ or the Christian Church, is the equitable title to the property in question?

There is no dispute in the evidence as to the following facts,—at least there is no conflict of evidence as to the evidence in relation thereto: On the 25th day of November, 1882, a congregation in the town of Hammond met and organized a church, and elected John Love, George W. Bunyan and Anderson Wacaser trustees of the Church of Christ. A certificate of the organization was duly sworn to by George S. Morris, secretary of that meeting, on the 7th day of December, 1882, and filed in the recorder's office of Piatt county on the 8th, and recorded in deed record 27, page 328. Sections 35 and 36 of chapter 32 of our statutes (Hurd's Stat. 1899, p. 440,) authorize the organization of "any church, congregation or society formed for the purpose of religious worship," to become incorporated in the manner here adopted by said congregation; and section 35 provides that such congregation "may adopt a corporate name, and upon the filing of the affidavit, as hereinafter provided, it shall be and remain

a body politic and corporate, by the name so adopted." Section 41 provides that the property of such church, congregation or society, real or personal, "shall immediately vest in such corporation and be subject to its control." The grantors in the deed, Warren and Powell, had previously agreed to donate the lots to the society, and the deed was applied for by Wacaser, on behalf of the trustees elected at the organization of the Church of Christ, but according to the testimony of John R. Howell, (who seems to have been the only witness present at the time testifying in this case,) "when it came to getting the lot of Mr. Warren, I, with Mr. Wacaser, went to see about the lots. Warren gave the lots. The next thing was the deed. We told him who the trustees were, and to have the deed to the trustees of the Christian Church. I waited for the deed. I don't remember whether the congregation appointed any committees. * * * They wanted to know who to make it to. I gave the trustees of the church. Wacaser was present. Both of us heard the conversation." On cross-examination he testified: "If I had known when I told Warren to write the deed that the local name was Church of Christ, I suppose I would have told him to write it Church of Christ. I didn't know at the time that I told Warren how to write the deed, that the local name adopted by the church was the Church of Christ. I didn't know it had more than the name of Christian Church. I don't know; I might have known, too, they are called the Church of Christ."

It is not pretended that there was in existence, at the time the deed was made and delivered, any such religious society, church or congregation legally organized under the name of "Christian Church," nor is there any evidence whatever even tending to prove that any such church has been since organized. All that is claimed by the appellee is, that in May, 1890, they held a meeting in a private hall in the village of Hammond and attempted to elect two trustees to fill vacancies claimed to exist in

the board of trustees elected at the original organization of the Church of Christ. There is not even an effort to prove that there was in Hammond, at the time of the execution of this deed, or since, an unorganized society called "The Christian Church." It is true, there is evidence to the effect that bills were rendered for furniture, labor, etc., performed for the church at Hammond, in the name of "Christian Church;" but we apprehend that no one would seriously contend that such a recognition of the name of a church could in any way change or affect its corporate name. It seems to us clear, beyond controversy, that at the time the deed was made to the three trustees legally constituting the corporate officials of the Church of Christ, it was the intention of both the grantors and the grantees to convey the property to that corporation. "The general rule is, that the misnomer of a corporation has the same effect as the misnomer of an individual, and when the true name is necessarily to be collected from the instrument in which such misnomer occurs, or is shown by proper averments, a grant by deed to a corporation, or a contract with it, will not be invalidated thereby." (7 Am. & Eng. Ency. of Law,—2d ed.— 688; *Northwestern Distilling Co.* v. *Brant,* 69 Ill. 658.) If it could be contended that the deed was to Love, Bunyan and Wacaser, as trustees of an unincorporated religious society, then the legal title would vest in them individually; but it being shown that they were in fact trustees of the legally incorporated Church of Christ, a court of equity would unquestionably enforce the trust for the benefit of that church.

Counsel for the appellee say that it is clearly established by the evidence that the original society formed in Hammond was known and recognized by several different names or titles. "It was called 'Church of Christ,' the 'Disciples of Christ,' and the 'Christian Church,' and these terms were identical in meaning, and used to designate persons of the same religious belief who were

members of the same religious denomination." This is true, in a sense.  People spoke of the church sometimes by one name and sometimes by another, but it is not true that the organization of the church was, or could, legally speaking, have been, known by any other name than that under which it was incorporated, and that was, "The Church of Christ." Churches and societies are often spoken of, in a general way, by names differing from their corporate names, but when the question of title to property is involved the corporate name of the body must control.

It seems to be thought that this controversy as to the title of the church property falls within the rule "that where a church is erected for the use of a particular denomination or religious persuasion, a majority of the members of the church cannot abandon the tenets and doctrine of the denomination and retain the right to the use of property, but such secessionists forfeit all right to the property, even if but a single member adheres to the original faith and doctrine of the church." (*Ferraria* v. *Vasconcellos*, 31 Ill. 25.)  We do not think the rule there announced can be made to apply to the facts in this case, to the advantage of appellee.  The congregation originally organized as the Church of Christ has continued, from that day to the present, to use and occupy the church edifice as a place of worship.  At the time it was organized it entered into a covenant, to the effect that "the congregation unite themselves together in one body as true, christian worshipers, to be known only as 'The Church of Christ,' covenanting with God and one another to take the word of God for their only rule of faith, practice and discipline, repudiating all human creeds; announcing the belief that anything practiced for church duty not taught in the word of God to be idolatrous, (hence sinful,) and not to give such things their aid but to try to prevent it in others, and promising to honor and obey their officers of the church." This dec-

laration of faith was signed by John Love and eighty-three other members of the congregation. There is no evidence in this record tending to show that such congregation, as a society of worshipers, has at any time departed from that faith.

We do not think the "address and declaration" introduced in evidence by the defendant, made at San Creek, Shelby county, August 14, 1899, can have any legal bearing upon the title to the property in suit. At most, that declaration shows that those who made it differed from other members of the church which they claimed to represent, as to proper methods and practices in the church government and modes of conducting religious worship. Certainly it could not, nor does it pretend to, change the doctrine and tenets as set forth in the covenant entered into by the Church of Christ at the time it was organized. Both that church and the signers of the San Creek address adopted and recognized "the word of God as their only rule of faith, practice and discipline, repudiating all human creeds." They differ, if at all, in their views as to what is the true interpretation of the teaching of the Bible or word of God. But certainly it can not be said the congregation worshiping in the church at Hammond under the legally organized name of "The Church of Christ" has withdrawn or seceded from the Christian Church, or the appellee, which is shown to have no organized existence whatever.

We entertain no doubt that by the deeds offered in evidence the equitable title to this property (if not the legal title) was vested by that conveyance in the three trustees for the use of the Church of Christ, and that the court below was in error in holding otherwise. The decree will accordingly be reversed and the cause will be remanded to the circuit court of Piatt county, with directions to enter a decree granting the relief prayed in the bill.                     *Reversed and remanded.*