**In re PAK BUILDERS, an Illinois general partnership, Debtor.**

**Charles E. Covey, Trustee, Plaintiff,**

**v.**

**Citizens Savings Bank, Defendant.**

**Bankruptcy No. 00–82412.
Adversary No. 01–8082.**

United States Bankruptcy Court,
C.D. Illinois.

Sept. 17, 2002.

---

Gary T. Rafool, Peoria, IL, for Debtor.

Andrew W. Covey, Peoria, IL, for Plaintiff.

Timothy J. Howard, Peoria, IL, for Defendant.

## OPINION

WILLIAM V. ALTENBERGER,
Bankruptcy Judge.

This matter is before the Court on cross motions for summary judgment seeking to determine the validity of alleged mortgages between the Debtor, PAK Builders, an Illinois General Partnership ("PAK" or "DEBTOR"), consisting of partners David Pugsley ("PUGSLEY") and Martin Kracher ("KRACHER"), and the Defendant, Citizens Savings Bank ("BANK"). Despite being a partnership, the DEBTOR took title to real estate and executed mortgages as a corporation, giving rise to the current litigation. As a result of these irregularities, the Trustee, Charles E. Covey ("TRUSTEE"), seeks to avoid the repayment of the purported mortgages either as a preferential payment to an unsecured creditor under 11 U.S.C. § 547(b), due to gross negligence in the execution of the deed or mortgages, or pursuant to his statutory grant of avoidance powers in 11 U.S.C. § 544(a)(3). Conversely, the BANK seeks a judicial determination that despite the irregular execution of the deeds and mortgages, the mortgages are valid encumbrances and are not avoidable by the TRUSTEE.

In challenging the mortgages as preferential payments under § 547(b),[1] the

---

1. 11 U.S.C. § 547(b) provides:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—

TRUSTEE first attacks the validity of the original deed granting PAK title to the lots. Under the TRUSTEE'S theory, if this deed is successfully challenged, PAK cannot subsequently execute a valid mortgage on property they did not own, and the BANK becomes an unsecured creditor subject to an avoidable preference action. Alternatively, if the deed is found valid and properly executed, the TRUSTEE urges the Court to find that the subsequent mortgages between the DEBTOR and the BANK were improperly executed due to the misidentification of the DEBTOR, achieving the identical result of making the BANK an unsecured creditor and the payments subject to challenge under § 547(b). Failing this, the TRUSTEE contends that even if both the deed and mortgage are valid as between the contracting parties, a creditor or bona fide purchaser would not possess constructive notice of these transactions as required by § 544(a)(3)[2] due to the misidentification of PAK's business form, making the mortgages avoidable and requiring the return of any payments for the benefit of the bankruptcy estate.

For the following reasons, the Court holds that 1) the underlying deed granting the property to the DEBTOR is valid, 2) the mortgages between the DEBTOR and BANK are valid, 3) the mortgages are not avoidable due to negligence in their execution, and 4) a subsequent bona fide purchaser or judgment creditor would have constructive notice of these transactions. In so holding, the Court finds that the BANK was a properly secured mortgagee and, therefore, the TRUSTEE'S preference action is not sustainable, and a potential bona fide purchaser or judgment creditor would receive sufficient notice of the encumbrance upon the property to prevent the TRUSTEE from avoiding the lien.

While extremely convoluted, the facts of this case are not in dispute. The DEBTOR filed for Chapter 7 bankruptcy protection on August 3, 2000. The parties to this action stipulate that within ninety days of filing its petition,[3] the DEBTOR made payments totaling $634,960.99 to the BANK while the DEBTOR was insolvent.[4]

---

(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2. 11 U.S.C. § 544(a)(3) provides:

(a)The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

3. The ninety-day time frame is important because if the Court determines the loan is unsecured, only payments made within this period may be avoided as preferential. 11 U.S.C. § 547(b)(4)(A).

4. Specifically, the payments for the individual LOTS were as follows:
Lot 182–5th Addition Pheasant Ridge Subdivision, McLean County $104,038.16
Lot 183–5th Addition Pheasant Ridge Subdivision, McLean County $105,806.04
Lot 184–5th Addition Pheasant Ridge Subdivision, McLean County $106,275.40
Lot 185–5th Addition Pheasant Ridge Subdivision, McLean County $106,275.40

The payments were applied toward mortgages on six parcels of real estate identified in this action as Lots 182–187 ("LOTS"). The LOTS were originally owned in trust by Jack Snyder ("SNYDER") as sole beneficiary to facilitate transactions in his real estate development business. In furtherance of this business and under SNYDER'S direction, his attorney and the trustee of his trust, Mercer Turner ("TURNER"), signed a deed ostensibly transferring the LOTS to PAK, a task he frequently undertook as trustee. In this case, the deed identified the grantee as "PAK Builders, Inc., a corporation" and not as a partnership, PAK's true legal form. The misnomer was not immediately discovered, and the deed was executed on November 2, 1999, and recorded on November 5, 1999. On neither date did a corporation named PAK Builders, Inc., exist or do business in the State of Illinois.[5] On November 5, 1999, after the deed was recorded, mortgages in favor of the BANK were recorded against the LOTS, also identifying the mortgagor as "PAK Builders, Inc."

On April 11, 2000, after these mortgages were recorded, TURNER received notification from PAK's attorney, David C. Wochner ("WOCHNER") that no corporation named PAK Builders, Inc., existed. On April 12, 2000, based on this information, TURNER prepared a new deed correctly identifying the DEBTOR as a partnership, thus latently correcting the misnomer in the original deed. While this newly corrected deed was recorded on April 19, 2000, the BANK was never notified of the corrected deed, and hence, never recorded a new mortgage properly identifying the DEBTOR before being repaid the borrowed amounts within the ninety-day preference period.

The well-known summary judgment standard applicable in this case is that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Bankruptcy Rule 7056 incorporating Fed.R.Civ.P. 56(c). When deciding a motion for summary judgment, the court must decide whether there is any material dispute of fact requiring a trial, considering all evidence in the light most favorable to the non-moving party. *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148–49 (7th Cir.1994). The moving party bears the burden of proof that no issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If this burden is met, the non-moving party must establish by specific allegations that there is a genuine issue of material fact, requiring a trial to resolve these issues. *Id.*

Finally, in actions involving real estate, the law of the state where the property is located controls the litigation. *U.S. v. 19.86 Acres of Land in East St. Louis, St. Clair County, Ill.*, 141 F.2d 344, 346 (7th Cir.1944). Because this case involves real estate deeds and mortgages exclusively located in Illinois, all real estate questions

Lot 186–5th Addition Pheasant Ridge Subdivision, McLean County $106,275.40
Lot 187–5th Addition Pheasant Ridge Subdivision, McLean County $106,290.59

5. On June 16, 1998, the Secretary of State did issue Articles of Incorporation to KRACHER and PUGSLEY for "PAK Builders, Inc." However on January 1, 1999, the corporation's name was changed to Exterior Renovation & Repairs, Inc. Because the mortgages in question were all executed after January 1, 1999, no corporation named "PAK Builders, Inc." existed and the grantee was therefore misnamed.

will be governed by Illinois law. In interpreting Illinois real estate law, this Court is guided by Illinois holdings often over a century old. However, it is a legal axiom that real estate law changes little through the years, and even recent real estate decisions are apt to simply recite antiquated holdings, underlying their consistent and timeless nature.

 In analyzing the validity of the deed purporting to transfer the LOTS from SNYDER'S trust to the DEBTOR for purposes of the TRUSTEE'S § 547(b) preference action, this Court notes the general rule in Illinois that a deed entirely lacking the name of the grantor, grantee, or thing granted is absolutely void. *Whitaker v. Miller,* 83 Ill. 381, 1876 WL 10353 (Ill.1876). However, the validity of such deeds becomes murkier when there is a misnomer in the deed. When the Illinois Supreme Court considered the impact of a misnomer of a party in a deed or conveyance, it adhered to the well-settled rule that when an interest is conveyed to a fictitious grantee no estate or interest is conveyed. *Chance v. Kimbrell,* 376 Ill. 615, 35 N.E.2d 48, 51 (Ill.1941). However, the *Chance* Court went on to note this rule must be distinguished from the equally well-settled rule that where the parties intend to pass a present estate to an existent grantee but execute the instrument under an incorrect name, such a conveyance passes title to the intended grantee. *Id.* In applying these two rules, the controlling factor is the intention of the parties as to who shall receive title. *Id.* Specifically applicable to the present facts, a similar rule governing the misnomer of a corporation mirrors that of individuals,

stating that "when the true name is necessarily to be collected from the instrument in which such misnomer occurs, or is shown by proper averments, a grant by deed to a corporation, or a contract with it, will not be invalidated thereby." [6] *Church of Christ v. Christian Church,* 193 Ill. 144, 61 N.E. 1119, 1121–22 (Ill.1901).

██ While searching Illinois case law for guidance in the application of these principles to the present facts, neither the parties nor this Court could find any cases on all fours. Nevertheless, several cases are relevant by analogy, although many of these cases involve the conveyance of a mortgage deed. Perhaps most analogous to the present facts, and therefore most instructive to this Court is *Fisher v. Milmine,* 94 Ill. 328, 1880 WL 9950 (Ill.1880). In *Fisher,* the grantee was incorrectly identified as Edwin C. Bodman when the intended grantee's correct name was Edward C. Bodman. Finding that the grantor intended to grant the mortgage to the firm of Milmine & Bodman, which, in actuality, consisted of George Milmine and Edward C. Bodman, the Illinois Supreme Court in *Fisher* stated, "the only inference which can arise is that the conveyance of the land was to the plaintiffs, and invested them with the title, although one of them is called a wrong name in the mortgage." *Id.* at *1.

Similarly before this Court is a deed purporting to grant title to "PAK Builders, Inc., a corporation" when, in fact, no such grantee existed and the DEBTOR, the partnership receiving the property, did not object until WOCHNER, their attorney, noticed the mistake and endeavored to correct the error. Examining the intent of

---

**6.** This Court feels compelled to note that while it could not find any Illinois case law directly addressing the misnomer in a deed or mortgage of a partnership or a business entity other than a corporation, the Court believes

the holding in *Church of Christ* should not be limited to corporations but should be extended to include any business form legally capable of serving as a grantee.

the granting party under the guidance of *Chance*, it appears from the record before the Court that the beneficial owner of the property, SNYDER, had virtually nothing to do with the transaction or even knew who PAK was at the time of the transaction, while TURNER had the authority to execute these contracts on SNYDER'S behalf. Nonetheless, because both SNYDER and TURNER were involved in granting the deed to PAK, this Court will consider the granting intent of both men.

The TRUSTEE goes to great lengths to emphasize that TURNER, an attorney and the one with the most direct involvement in the drafting of the deeds, was fully aware a difference generally exists between a partnership and a corporation; that, legally, corporations and partnerships cannot be one in the same or "alter-egos" of one another.[7] The TRUSTEE also stresses that when drawing up the deed TURNER "intended" to transfer the property to a corporation not in existence at the time. While TURNER did execute the deed with the *purpose* of granting the LOTS to PAK Builders, Inc., he only did so because he believed this was the correct name of the grantee, and, lacking a reason to question his assumption, did not pursue the issue further. TURNER dep. pp. 13–14. According to the evidence before this Court, TURNER never expressed an awareness of PAK'S business form and simply took the instructions provided to him without question.

This Court finds the TRUSTEE'S literal definition of intent misplaced under the current facts. If the Court applied the TRUSTEE'S literal definition of *intent*, the error in *Fisher* would have invalidated the mortgage upheld in that decision.

Seeking to perform his job correctly, the scrivener in *Fisher* similarly meant or intended to make Edwin C. Bodman and not Edward C. Bodman the grantee in the mortgage documents. It was uncontested that due to his misunderstanding the scrivener in *Fisher* clearly believed that Edwin was the proper grantee of the mortgage, and, under a literal interpretation of *intent*, purposefully named Edwin grantee. There was neither evidence in the *Fisher* opinion that the scrivener or the grantor intended the mortgage to be executed in favor of Edwin C. Bodman to the exclusion of Edward C. Bodman, nor was there evidence of fraud or deceit in the execution of the mortgage because the scrivener knew Edwin C. Bodman was a fictitious person. The scrivener's mistake in *Fisher* was simply a clerical error the plaintiff tried to capitalize upon in his effort to avoid what otherwise was a valid mortgage. By analogy, due to the highly similar function of TURNER to the scrivener in *Fisher*, the Court finds no difference between TURNER'S purpose in the instant case and the scrivener's intent or purpose in *Fisher*.

▇ From analyzing the *Fisher* opinion along with the holding in *Chance*, it is clear to this Court that to avoid a deed or a mortgage because it was intended to be conveyed to a fictitious grantee either requires proof of an element of malice or fraud not found in *Fisher* or this case, or that the parties intended the named grantee to receive the property coupled with the absence of any probative evidence the true intended grantee differed from the named grantee. In other words, after evidence establishing a clerical error is presented, the TRUSTEE would need to provide evidence that the parties intended PAK

---

7. In making sure this point was emphasized, the TRUSTEE asked TURNER whether he believed PAK Builders, Inc., a corporation, was another name or an assumed name for PAK Builders, an Illinois General Partnership, four times in a row, with only slight variations in his question. TURNER dep. pp. 6–7.

Builders, Inc., to be the grantee and not PAK Builders, the partnership. Adhering to the TRUSTEE'S literal reading of the word *intent* would not allow for the scrivener's error recognized as a reformable mistake in *Fisher* because such a literal reading precludes the parties from being able to demonstrate a clerical error occurred. This holding is further bolstered by the Illinois Supreme Court decisions in *Beaver v. Slanker*, 94 Ill. 175, 1879 WL 8678 (Ill.1879) and *Richey v. Sinclair*, 167 Ill. 184, 47 N.E. 364 (Ill.1897) demonstrating that for over a century Illinois courts have favored the reformation of mortgages and deeds suffering from mutual mistakes and clerical errors where the intent of the parties can be discerned from the facts surrounding the transactions.

In *Beaver*, the parties transposed the names of the mortgagee and mortgagor in the mortgage documents, and the plaintiff urged that while the mistake could be corrected as between the two parties to the deed, an innocent bona fide purchaser of the land could not be charged with notice of the mortgage and should therefore take the land unaffected by the mortgage. Noting all other aspects of the deed were correct and uncontested, the Illinois Supreme Court rejected this argument, reforming the mortgage and holding that the plaintiff had notice of the mistake from the recording of the mortgage, emphasizing that the mistake was "palpable" because the parties signed and acknowledged the deed correctly. *Id.* Similarly in *Richey*, the space where the grantee or mortgagee's name should appear had been left blank. However, like the *Beaver* Court, the Illinois Supreme Court in *Richey* found that after reviewing all of the provisions of the mortgage, it became clear who

the intended grantee was and the court corrected the error and validated the mortgage.

While the TRUSTEE has gone to great lengths attempting to demonstrate that all relevant parties were aware that a corporation and a partnership are distinct entities and that TURNER believed he was correctly granting the deed to PAK Builders, Inc., the TRUSTEE has offered no evidence either SNYDER or TURNER intended the LOTS to be deeded to PAK Builders, Inc., to the exclusion of the DEBTOR. Likewise, the TRUSTEE has neither offered evidence that either SNYDER or TURNER were aware PAK Builders, Inc., was not a viable legal entity in an effort to prove they intended fraud or malice, nor offered any other evidence leading this Court to believe anything more than a careless clerical error is present.[8] On the contrary, there is substantial evidence to support the Court's finding that the correct intended grantee, PAK in partnership form, differed from the named grantee, a corporation. Both parties executed the deed with the purpose of vesting title in KRACHER and PUGSLEY regardless of the precise business form these individuals used. In real estate conveyancing disputes, it is the intent of the contracting parties that governs, and as a result, nothing more than a clerical error appears on the facts before this Court.

Additionally, this Court notes that neither contracting party is challenging the deed's validity or in any way objecting to the transaction. In fact, WOCHNER'S April 11, 2000, letter informing TURNER that the trustee's deeds mistakenly identified the grantee as PAK Builders, Inc., resulted in the prompt and unquestioned filing of a corrective deed on April 12,

---

**8.** In fact, in his deposition SNYDER states he had "never even heard of PAK Builders."

SNYDER dep. p. 15.

2000. Plaintiff's Exhibits 34–35. This amazingly quick turnaround time fully supports this Court's conclusion that both SNYDER and TURNER simply wanted to properly execute the contract by granting the property to an entity known generally to them as "PAK Builders."

Further, neither SNYDER or TURNER concerned themselves with the specifics of the transaction, and it appears the underlying agreement was entered into on SNYDER'S behalf by other employees of his business.[9] Throughout their depositions, neither man expressed much familiarity with the transaction, nor did they know what type of business entity PAK Builders was, nor did they care.[10] According to TURNER'S deposition, SNYDER'S instruction was simply to execute the conveyance correctly, which TURNER believed meant matching the grantee in the deed with the insured in the title commitments because he had no discretion to do otherwise. TURNER dep. pp. 7–9, 14–15, 24–25. This conclusion is succinctly summed up by the TRUSTEE'S deposition questions directed to TURNER:

> Q: Okay. Would Jack Snyder have had any idea whether Pak Builders was a corporation or a partnership?
>
> A: I don't believe so.

Q: Would he have cared? Would it have made any difference to him?

A: I don't believe it would have.

Q: Okay. And you testified that you drafted the deed, Exhibit T1, and what you intended to do was to match the name of the Grantee so that it equaled the name of the proposed insured—

A: Yes.

Q: In doing that were you following Jack Snyder's instructions; is that what he wanted you to do?

A: His instruction would not have been that specific. His instruction would have been to—

Q: Do it right?

A: Yes, to get the paperwork prepared for a closing ... if the Grantee doesn't match the commitment, then they're not going to close and they're going to send it back and say redo it.

Q: So, in your belief the bank, Citizens Bank, would not have closed this loan if the Grantee did not agree with the name of the proposed insured; is that correct?

A: Yes.

Turner dep. pp. 24–26.

Urging a literal interpretation of *intent,* the TRUSTEE attempts to categorize the conveyance as intentionally directed at a

---

9. Specifically, SNYDER said, "I sell hundreds of lots. I haven't seen a contract or a deed since I can remember when ... Because it is all set up in my company where other people handle it. I put the projects together ... and get them zoned, handle the financing." SNYDER dep. pp. 4–5. Specifically referring to the deeds to the LOTS in question, SNYDER stated that "this is the first time I have ever seen any of [these deeds]." SNYDER dep. p. 11. Commenting on the knowledge of his attorney, TURNER, with regard to the deeds and his instructions in preparing these deeds SNYDER stated, "he (TURNER) didn't even know the transaction was taking place." SNYDER dep. p. 13.

10. In SNYDER'S own words when questioned about the type of legal entity PAK Builders was, he stated, "I have never even heard of Pak Builders until this deposition thing came up." SNYDER dep. p. 15. Demonstrating how removed he was from the entire transaction, SNYDER testified he was unaware of the letter from WOCHNER correcting the business identity of PAK Builders or that a corrected trustee's deed had been issued. SNYDER dep. pp. 16–18. TURNER only cared about the business form of the grantee in so far as it matched the name of the insured and therefore would be "correctly" completed. TURNER dep. pp. 24–25.

fictitious entity and therefore "within the well-settled rule that where an interest is conveyed to a fictitious grantee no estate or interest is conveyed" under Illinois law. *Chance,* 35 N.E.2d at 51. However, this Court finds the TRUSTEE'S efforts misplaced, and the equally well-settled rule, that "where the parties intend to pass a present estate to an existent grantee but under a name other than the correct one, such a conveyance passes title to the intended grantee" should apply instead. *Id.*

Finally, the Court is aware of the TRUSTEE'S argument that the misnomer in this case is an error of a higher order than those explored in previous Illinois court decisions involving individuals, because the legal implications for most partnerships differ greatly from those for most corporations.[11] Nonetheless, this Court recognizes the legal distinction between a corporation and a partnership, no matter how great, is not currently at issue. What is at issue is merely the misidentification of a grantee's name. As the Illinois Supreme Court pointed out in *Church of Christ,* 61 N.E. at 1121–22, and an Illinois appellate court recently noted as good law in *In re County Treasurer and ex Officio County Collector of Cook County,* 327 Ill. App.3d 622, 763 N.E.2d 900, 903, 261 Ill. Dec. 651 (Ill.App. 1 Dist.2002), the fact that the current situation involves a misnamed corporate entity and not an individual is irrelevant, so long as evidence of a reformable clerical mistake is present.

Evidence also exists that as grantees, both KRACHER and PUGSLEY possessed the requisite intent to receive the deeded property in their partnership name. KRACHER demonstrates throughout his deposition that he and PUGSLEY were disturbingly loose in

identifying their business form when entering contracts even though they always intended to be bound in what they believed to be partnership form. KRACHER dep. pp. 20–25; 60–61. While irresponsible from a business standpoint, the haphazard way in which KRACHER and PUGSLEY identified their business is more than adequately supported by the record before the Court.

For example, from the documents filed with this Court, the Court notes third parties contracting with KRACHER and PUGSLEY never consistently referred to KRACHER and PUGSLEY'S business form as either a corporation or a partnership. As most of these parties referred to PAK Builders both with and without an indication of their business form, it is not a leap of logic to conclude that KRACHER and PUGSLEY considered themselves simply "PAK Builders," and parties contracting with KRACHER and PUGSLEY believed "PAK Builders" would be bound whether or not a corporate or partnership designation followed. Additionally, from the mechanic's liens found in the over 320 exhibits the TRUSTEE filed with the Court, it is apparent that many business transactions were carried out in face to face transactions with either KRACHER or PUGSLEY, who never indicated their business form and signed contracts with a "doing business as" distinction. Officially, the two were known only as PAK Builders—without a partnership designation—even after signing their original partnership agreement in 1994. Defendant's Exhibit 1.

The record is rife with inconsistent identification. For instance, the contracts for the sale of all of the real estate that is the subject of the present action identified the

---

**11.** The Court is not presented with the possibility of limited liability partnerships and corporations, S corporations, or any other business form recognized under Illinois law that might alter the liability relationship between a standard partnership or corporation.

buyer simply as PAK Builders and is signed by both KRACHER and PUGSLEY. Plaintiff's Exhibits 32(a)–(f). In its mechanic's lien claims against the DEBTOR, Spencer Plumbing referred to the DEBTOR as "David E. Pugsley & Martin J. Kracher d/b/a PAK Builders, an Illinois General Partnership," "Pugsley & Kracher d/b/a PAK Builders," and simply as "PAK Builders" all within the same documents. Plaintiff's Exhibits 33(a)–(e). In its lien claim, Norandex, Inc., refers to the DEBTOR as "PAK Builders, Martin J. Kracher and David E. Pugsley General Partners Contractor and Owner." Plaintiff's Exhibits 33(f)–(g). The claim of Hampton Distributing Co. refers to the underlying oral contract as being with "MARTIN J. KRACHER and DAVID E. PUGSLEY doing business as PAK BUILDERS, an Illinois General Partnership." (emphasis in original). Plaintiff's Exhibit 33(h). Jennings Painting and Mark Steidinger Construction both filed their claims against "PAK Builders, by and through Dave Pugsley." Plaintiff's Exhibits 33(w)–(x). In their mechanic's lien claim, Hundman Lumber Mart Co., Inc., refers to "Martin J. Kracher and David E. Pugsley d/b/a P.A.K. Builders" without any indicia of business form. Plaintiff's Exhibit 33(y). Likewise, K & J Drywall refer to "Dave Pugsley and Marty Kracher d/b/a PAK Builders" in their claims. Plaintiff's Exhibits 33(cc)–(ee). McLean County Glass & Mirror, Inc., make claims simply against "PAK Builders." Plaintiff's Exhibits 33(ff)–(gg).

Finally, only two businesses refer to PAK Builders as a corporation. Carpet Weavers consistently refers to the defendant in their claims as "PAK Builders, Inc." Plaintiff's Exhibits 33(j)–(v). Alexander Lumber Co. also filed claims against "PAK Builders, Inc.," for work performed on Lots 182–183, while simultaneously identifying "PAK Builders, a partnership," and "Martin John Kracher and David Eugene Pugsley, d/b/a PAK Builders" as the defendants in claims for work completed on Lots 184–187. Plaintiff's Exhibits 33(hh)–(jj).

The clear majority of mechanic's liens refer to PAK Builders either as a partnership or without any reference to business form. In Illinois it is statutorily required that to be considered a corporation, the name of a domestic corporation "shall contain, separate and apart from any other word or abbreviation in such name, the word 'corporation,' 'company,' 'incorporated,' or 'limited,' or an abbreviation of one of such words . . ." 805 ILCS § 5/4.05(a)(1). Further, corporate existence is inconsistent with the use of the d/b/a designation following an individual's name. *Fleet Mortgage Corp. v. Nelson,* 1986 WL 6259, *1 (N.D.Ill.1986). Evidence abounds demonstrating that KRACHER and PUGSLEY always intended to be bound as a partnership on all contracts they entered despite the inconsistencies in the precise name they may have used. Thus, Illinois law, along with KRACHER and PUGSLEY'S belief they were working as partners for over 15 years pursuant to numerous partnership agreements, strongly supports this Court's conclusion KRACHER and PUGSLEY retained this belief from the moment they reduced their partnership agreement to writing until their bankruptcy. In fact, while the actual mortgage and mortgage note identify PAK Builders, Inc., the notary public inconsistently identified the persons appearing before her not as PAK Builders, Inc., but as Pak Builders, David Pugsley and Martin Kracher.[12] Plaintiff's Exhibits 36–41.

---

**12.** Plaintiff's Exhibit 41 addressed Lot 187

and the notary public identified the persons

Based upon a record rife with such self-identification incongruities, this Court concludes neither KRACHER nor PUGSLEY executed any contract with a fraudulent or malicious intent. Inattention to detail in the execution of deeds and mortgages has been recognized as a reformable error in over a 100 years of Illinois case law. While not condoning the fluidity with which they identified themselves, the record before this Court combined with the contracts executed by KRACHER and PUGSLEY convincingly demonstrates they subjectively believed they were executing contracts on behalf of their partnership even if they utilized an indicia of corporateness. Under *Chance*, it is this intent that governs. Based upon Illinois real estate law and the facts of this case, this Court is compelled to conclude that the deed conveying the LOTS from SNYDER to PAK Builders, Inc., was a scrivener's error in the same vein as *Fisher*, and validly grants the LOTS to the DEBTOR.

 Having found that the original conveyance of the LOTS was validly granted to the DEBTOR, the Court now turns its attention to the mortgages of these LOTS granted to the BANK. Under these facts, the same circumstances compelling the Court to find KRACHER and PUGSLEY intended to be bound as a partnership in their dealings with SNYDER and TURNER form the basis for the Court's conclusion KRACHER and PUGSLEY also intended to grant the mortgages to the BANK as a partnership. Finding otherwise would be both inconsistent and contrary to the record before the Court.

While this Court is dismayed by the sloppiness exhibited by KRACHER and PUGSLEY in their business dealings, the same inattention to detail is even more troubling when demonstrated by the BANK, a financial institution expected to maintain a high degree of sophistication in its business affairs. When addressing the intent of the BANK in its dealings with PAK as compared to the dealings PAK had with SNYDER and TURNER, the long-running familiarity the BANK had with PAK gives the Court pause. While SNYDER indicated TURNER had executed "thousands" of deeds on behalf of his trust, there is no indication either SNYDER or TURNER had ever dealt with PAK, KRACHER, or PUGSLEY before. SNYDER dep. p. 17. Due to SNYDER'S deposition testimony that he had never previously heard of PAK Builders, it is easier to understand how a clerical error could occur.

Conversely, the relationship between the DEBTOR and the BANK cannot be characterized as unfamiliar or novel. In fact, according to Richard Becker ("BECKER")—alternately the Senior Vice President in Lending, Executive Vice President, Chief Operating Officer, and Corporate Secretary at all relevant times—approximately 175 loans had been granted to KRACHER and PUGSLEY for a total of 11 or 12 million dollars since 1994. BECKER dep. pp. 10, 12, 126. Despite this consistent record of business transactions profiting the BANK close to a million dollars, BECKER repeatedly indicates the BANK only knew the business of KRACHER and PUGSLEY simply as PAK Builders, without a partnership or a corporate identification, considering them simply "partners in a business." BECKER dep. pp. 27–28, 77. Speaking for the BANK, BECKER indicated the BANK believed any contracts referencing PAK Builders, Inc., bound "PAK Builders." BECKER dep. pp. 59, 185. BECKER further stated

appearing simply as "David Pugsley and Martin Kracher" without the PAK Builders identi-

fication found in the other mortgage agreements.

that mortgages were always intended to be granted simply to PUGSLEY and KRACHER as PAK Builders, regardless of whether PAK Builders was described as a partnership or a corporation. BECKER dep. pp. 75–76, 151–2, 85. This testimony is remarkably consistent throughout BECKER'S deposition. BECKER dep. pp. 89, 95–6, 101, 106–7, 118, 141, 150, 160.

The TRUSTEE also failed in a dogged effort to get Cheryl Lambert ("LAMBERT"), the closing officer on the mortgages, to state she believed "I" when used internally in a note identifying the borrowers as PAK Builders, Inc., referred to the corporation. LAMBERT dep. pp. 26–28. Instead, LAMBERT stated she believed the "I" in the note referred to KRACHER and PUGSLEY individually and identified their personal liability on the note, despite her professed awareness of the general differences between a partnership and a corporation. LAMBERT dep. pp. 28, 35–37, 50. Additionally, LAMBERT later expressed her belief—similar to that of BECKER—that PAK Builders, Inc., was the same as "PAK Builders" without any indicia of corporateness and that mortgages to PAK Builders, Inc., were identical to mortgages obtained by PAK Builders. LAMBERT dep. pp. 75, 89, 92, 101. LAMBERT'S deposition demonstrates she did not differentiate between "PAK Builders," or PAK Builders with a partnership or corporate designation. LAMBERT dep. p. 105.

Additionally, despite a succession of questions directed to LAMBERT to establish she knew what "Inc." stood for and that a partnership and a corporation could not be the same thing, LAMBERT testified she believed a corporation could have partners. LAMBERT dep. pp. 44–45, 60, 63, 123. In the next breath, LAMBERT states that although she believed that KRACHER and PUGSLEY were partners

in a corporation and could sign on behalf of the corporation, she continued to believe that they remained personally liable on the debt. LAMBERT dep. p. 46, 53, 58.

Despite her professed confidence in her knowledge, based on her deposition, LAMBERT clearly had very little grasp of even the most rudimentary distinctions between the generic forms of partnerships and corporations. In actuality, LAMBERT simply sought to have the mortgagor agree with the entity named in the title commitments, stating in her deposition, "we relied on the title company to protect us." LAMBERT dep. pp. 62–3, 98, 145. If nothing else, LAMBERT'S complete lack of knowledge about the legal implications of business forms and her blind reliance on an incorrect title commitment highlights this Court's conclusion that, regardless of her title at the BANK, her function did not differ in any appreciable way from the scrivener in *Fisher*.

All of the deposition testimony supports BECKER'S insistent belief that the BANK always intended to grant mortgages in favor of the business entity represented by KRACHER and PUGSLEY and known to the BANK simply as PAK Builders and that none of the BANK staff paid any attention to the specific business form of PAK Builders. BECKER dep. p. 149. Thus, when BANK employees intended to take a mortgage from PAK Builders, this purpose carried over to an intent to take a mortgage from PAK Builders, an Illinois general partnership, as this was the true legal form of PAK Builders. BECKER dep. pp. 142–43. Although an embarrassingly recurrent and virtually inexcusable mistake by the BANK, the record indicates the BANK at all times intended to bind the business formed by KRACHER and PUGSLEY, liabilities both parties accept as their contracting intention. In spite of the repetition and severity of the BANK'S mistakes, they are insufficient to

remove the BANK'S error from that of a reformable scrivener's error continuously recognized in Illinois real estate law.

Finally, the TRUSTEE'S charges negligence on the execution of the deed or the mortgage bars reformation of the contracts. The Illinois Appellate Court in *Marengo Federal Sav. and Loan Ass'n v. First Nat. Bank of Woodstock,* 172 Ill.App.3d 859, 527 N.E.2d 121, 125, 122 Ill.Dec. 749 (Ill.App. 2 Dist.1988) citing *Blumenfeld v. Neuman,* 350 Ill.App. 306, 112 N.E.2d 742, (Ill.App. 4 Dist.1953), held that "negligence, standing alone, will not bar reformation because of mutual mistake in that mistake almost always presupposes negligence." Only negligence so gross as to establish a violation of a legal duty will bar reformation, a showing the TRUSTEE has failed to allege. *Id.* Therefore, as a result of the foregoing, the BANK is the holder of a properly secured mortgage and the TRUSTEE'S § 547 preference action fails.

Unfortunately, this does not dispose of all the issues before the Court. The TRUSTEE still contends that even if these contracts are valid and binding as between the contracting parties, the mortgages as executed are insufficient to provide notice to a judgment creditor or bona fide purchaser, allowing such a person to take free of any encumbrances on the LOTS under 11 U.S.C. § 544(a)(3). This argument comports with Illinois case law holdings that reformation should not be permitted against third parties when such reformation would adversely effect the rights of bona fide purchasers. *Department of Conservation v. Nevois,* 234 Ill. App.3d 227, 600 N.E.2d 91, 93–94, 175 Ill.Dec. 468 (Ill.App. 5 Dist.1992); *Matter of Bailey,* 999 F.2d 237, 242 (7th Cir.1993), citing *Gatton v. Page,* 44 Ill.App.3d 559,

358 N.E.2d 685, 687, 3 Ill.Dec. 287 (Ill.App. 5 Dist.1976). For the reasons that follow, the Court holds that a hypothetical judgment creditor or bona fide purchaser would have notice of the encumbrances upon the LOTS under Illinois law, reformation of the deeds and mortgages is therefore proper and binding upon third parties, and the encumbrances are unavoidable by the TRUSTEE.

Under § 544(a)(3), the TRUSTEE has the power to avoid any encumbrance upon a piece of property that a hypothetical bona fide purchaser of real estate or judgment creditor lacking constructive notice of such encumbrance would possess.[13] Whether or not such a subsequent purchaser or judgment creditor would possess constructive notice is determined by state law and is unaffected by actual knowledge. *See, In re Sandy Ridge Oil Co., Inc.,* 807 F.2d 1332, 1336 (7th Cir.1986). Addressing the interrelationship between § 544(a)(3) and state law, 5 Collier on Bankruptcy ¶ 544.08 (15th Ed. Rev.1997) explains:

> The trustee can exercise rights as a bona fide purchaser at the time of commencement of the case regardless of actual knowledge. However, the trustee's right as a bona fide purchaser does not override state recording statutes and permit avoidance of any interest of which a trustee would have had constructive notice under state law. Thus, a trustee generally can avoid an unrecorded transfer of land, but not after having been put on constructive notice or inquiry of a prior claim. (Footnotes and citations omitted).

Therefore, the BANK'S mortgage is only valid and enforceable against a bona fide purchaser if such a purchaser would have had constructive notice of the encum-

---

**13.** This Opinion should be read in conjunction with the companion adversaries # 00–8145; # 00–8151, issued simultaneously with

this Opinion and addressing this identical issue more extensively.

brance under Illinois law. *In re Richardson*, 75 B.R. 601, 604 (Bankr.C.D.Ill.1987). Because the BANK is the entity charging constructive notice, the BANK bears the burden of proof. *Krueger v. Oberto*, 309 Ill.App.3d 358, 724 N.E.2d 21, 29, 243 Ill. Dec. 712 (Ill.App. 2 Dist.1999).

 In Illinois, "the primary means of charging any party with notice of an interest in real property is to record that interest," and the Grantor/Grantee Index is the sole instrument through which constructive notice can be charged. *Skidmore, Owings & Merrill v. Pathway Financial*, 173 Ill.App.3d 512, 527 N.E.2d 1033, 1034, 123 Ill.Dec. 395 (Ill.App. 3 Dist. 1988); *Krueger*, 243 Ill.Dec. 712, 724 N.E.2d at 29. A purchaser is automatically charged with constructive notice of any document actually operating to give notice that is recorded in the direct chain of title in the Grantor/Grantee Index. *In re Richardson*, 75 B.R. 601, 605 (Bankr.C.D.Ill. 1987); *Skidmore*, 123 Ill.Dec. 395, 527 N.E.2d at 1034. However, recording outside of this index is not required by law and fails to automatically provide constructive notice. *Krueger*, 243 Ill.Dec. 712, 724 N.E.2d at 29.

 Notwithstanding this rule, "if there is an error apparent on the face of the instrument and of such a character as to lead a purchaser of ordinary prudence to make inquiry, and inquiry would have led him to knowledge of the true condition of the title, he will be held to such knowledge." *Leeser v. Kibort*, 243 Ill.App. 258, 1927 WL 4010 (1927). This type of notice is known as inquiry notice, arising "when one has notice of facts which would put a prudent person on inquiry. Once one is put on inquiry notice, that person is chargeable with knowledge of other facts that might have been discovered by dili-

gent inquiry." *In re Bruder*, 207 B.R. 151, 159 (N.D.Ill.1997) (citations omitted). Therefore, under limited circumstances, an instrument can provide a creditor or bona fide purchaser with constructive notice via inquiry, satisfying the requirements of § 544(a)(3).[14]

 Thus, the central question before this Court is whether a subsequent purchaser or judgment creditor searching the Grantor/Grantee Index would be put on constructive notice of the mortgages either automatically through recording in the direct chain of title in the Grantor/Grantee Index, or through inquiry notice. The answer to this question can best be seen in the hypothetical scenario of a potential bona fide purchaser. First, a purchaser from the DEBTOR would search the Grantor/Grantee Index to determine if the partnership had title. Searching under PAK Builders, the DEBTOR'S working and legal name, reveals deeds and mortgages referencing both PAK Builders the partnership and PAK Builders, Inc. Defendant's Exhibit C. Because the chain of title is defined as "[t]he successive conveyances commencing with the patent from the government or other source, and including the conveyance to the one claiming title," tracing the chain of title would reveal the original grant to PAK Builders, Inc., and the subsequent mortgage to the BANK as coming before the corrective trustee's deed naming the partnership as grantee, placing the BANK'S liens outside the direct chain of title. *Bruder*, 207 B.R. at 157.

However, due to the high degree of similarity between "PAK Builders, an Illinois General Partnership" and "PAK Builders, Inc.," and the filing of recorded instruments for both under "PAK Builders," this irregularity would undoubtedly amount to inquiry notice, a doctrine unchanged since

---

**14.** This Court is aware of the *Bruder* Court's finding that inquiry notice cannot beget constructive notice. That position was rejected in the companion adversary to this Opinion as being contrary to controlling state law.

the Illinois Supreme Court decision in *Doyle v. Teas*, 5 Ill. 202, 1843 WL 4067 (1843), stating that "whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the fact, by the exercise of ordinary diligence and understanding." Because this irregularity would necessitate an inquiry into the chain of title, the would-be purchaser would easily connect the corrected deed from which the DEBTOR claimed ownership to the original deed naming PAK Builders, Inc., as grantee. The connection of the corrective trustee's to PAK Builders, Inc., would require a diligent purchaser to make inquiry into the relationship between the two entities, most likely by contacting the individuals involved in the transaction. As this Court has found, the purchaser would then find the partnership and the corporation are one and the same as the intended grantee of the deed, and, consequently, the BANK'S mortgages bind the partnership.

While this Court recognizes that the searches necessitated by these facts require some diligence on behalf of the would-be purchaser, this minor amount of diligence is more than supported by Illinois case law finding an inquiry standard sufficient to provide notice of encumbrances on property. As the Illinois Supreme Court held in *Grundies v. Reid*, 107 Ill. 304, 1883 WL 10303 (1883), over a century ago: "The question upon constructive notice is not whether the purchaser had the means of obtaining, and might, by prudent caution, have obtained the knowledge in question, but whether the not obtaining it was an act of gross or culpable negligence." Due to the similarity of the DEBTOR and its corporate twin and the minor amount of diligence required to solve the incongruity, this Court finds it would be an inexcusable act for a would-be purchaser to fail to obtain knowledge of the BANK'S mortgages. There are simply too many inconsistencies for a would-be purchaser to ignore and still claim a diligent search.

■ Therefore, based on the Court's finding that a bona fide purchaser would have notice of both the deed and mortgage, reformation of both instruments is entirely appropriate and consistent with Illinois law. "A court of equity will reform a deed or other instrument of writing upon the ground of mistake provided that the mistake is one of fact rather than law, the proof clearly and convincingly shows a mistake was made, and the mistake was mutual and common to both parties to the instrument." *Roots v. Uppole*, 81 Ill. App.3d 68, 400 N.E.2d 1003, 1006, 36 Ill. Dec. 423 (Ill.App. 3 Dist.1980). In both the deed and the mortgages, mutual mistakes existed in that they were written in terms that violated the understanding of the parties. *See, Beynon Bldg. Corp. v. National Guardian Life Ins. Co.*, 118 Ill. App.3d 754, 455 N.E.2d 246, 250, 74 Ill. Dec. 216 (Ill.App. 2 Dist.1983). Therefore, based on its equitable powers to reflect the parties true intent, this Court reforms the deed and mortgage to name PAK Builders, an Illinois General Partnership as grantee and mortgagor instead of PAK Builders, Inc.

As a result of the foregoing, the Court finds the deed from SNYDER'S trust to the DEBTOR was valid and reforms the deed to reflect the intent of the parties that the DEBTOR and not PAK Builders, Inc., was the intended grantee. Likewise, the Court finds the mortgage executed by the DEBTOR and the BANK is valid as between these parties and reforms the mortgage to reflect this intent. Finally, the Court finds that due to the Illinois doctrine of inquiry notice a bona fide purchaser would be charged with constructive notice of the mortgages and would take the property subject to the BANK'S liens.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

See written Order.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that the Summary Judgment Motions filed by CITIZENS SAVINGS BANK to determine the validity and enforceability of mortgages with PAK BUILDERS, AN ILLINOIS GENERAL PARTNERSHIP are hereby GRANTED and the payments in satisfaction of these notes and mortgages are ALLOWED. The corresponding Summary Judgment Motions filed by the TRUSTEE are DENIED in their entirety.